Statement.

## Richmond.

SHENANDOAH LAND AND ANTHRACITE COAL COMPANY v. HISE.

NOVEMBER 21, 1895.

1. ASSIGNMENT OF MINERALS "TO FARM"—*Mining Lease.*—A written agreement under seal, by which the owner of lands assigns to another "to farm," for a term of years, all his right, title, and interest to all the minerals on his land, founded upon no consideration except that the assignee shall pay to the owner of the land one-fourth part of all the profits which may be obtained from any mineral which may be mined on said land, is a "mining lease," and confers on the assignee only the usual mining rights, which it is his duty to exercise in a reasonable time and in a manner calculated to benefit the lessor as well as himself. And if the lessee fails to discharge this duty a court of equity will set aside and annul the agreement.

Argued at Staunton.   Decided at Richmond.

Appeal from a decree of the Circuit Court of Augusta county, pronounced June 23, 1892, in a suit in chancery wherein the appellee was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*J. B. Stephenson* and *George G. Grattan*, for the appellant.

*Patrick & Gordon*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

This case arose out of the following agreement:

" For value received, I hereby assign all my right, title and interest, for the term of 99 years, also with privilege of renewal for a like term of years, to all minerals of whatsoever description that may be found on my lands in the county of Augusta, and State of Virginia, to A. Nicholas, his heirs and assigns, to farm ; the said A. Nicholas, his heirs and assigns, shall have the right of way, that on condition that he or they pay to me one-fourth of all the profits that may be obtained from any mineral that shall be mined on my said land, after deducting legal interest on the cash capital used by the said A. Nicholas, his heirs and assigns.

" In witness whereof I hereunto set my hand and seal this the 15th day of March, in the year of our Lord eighteen hundred and fifty-three.

his<br>
WILLIAM ⋈ SHEFFER, [Seal.] "<br>
mark.

The land of William Sheffer, to which this agreement had reference, consists of a tract of 613 acres lying in North River Gap, Augusta county, and is the same land that was conveyed by Sheffer and wife to Emanuel Hise, appellee, by two deeds, setting forth a full and valuable consideration, the one dated March 1, 1876, and the other dated November 4, 1890—both deeds being duly recorded in the clerk's office of Augusta County Court. On the 17th day of March, 1875, A. Nicholas, by a writing also duly recorded in Augusta county clerk's office, assigned and transferred all of his rights or interests acquired under the agreement executed by William Sheffer, above set forth, to the Shenandoah Land and Anthracite Coal Company, a corporation of the State of New York, composed of the said Nicholas and four other persons.

In March, 1891, Hise filed his bill in the Circuit Court of

Augusta county against Nicholas and the Shenandoah Land and Anthracite Coal Company, asking the court to relieve the complainant's property of the cloud upon its title caused by the recordation of the agreement from Sheffer to Nicholas of March 15, 1853, and the assignment from Nicholas to the Shenandoah Land and Anthracite Coal Company, upon the grounds that the contract of 1853 was obtained by fraud, and that Nicholas and his assignee, the Shenandoah Land and Anthracite Coal Company, had abandoned and surrendered all of their rights under the agreement of 1853.

The first ground seems not to have been pressed in the court below, but upon the hearing of the cause upon the bill of complainant, the answers of the defendants thereto, and the depositions taken for both complainant and defendants, the Circuit Court of Augusta, by its decree of June 23, 1892, set aside and annulled both the agreement made by Sheffer with Nicholas in 1853, and the assignment executed by Nicholas to the Shenandoah Land and Anthracite Coal Company March 17, 1875; and, in order to make stable and quiet the title of Hise to the lands in question, and to show that the cloud upon the title had been removed, directed its commissioner to execute and place upon the record of the County Court of Augusta, at the costs of the defendants, a deed releasing and discharging said deed of the 15th of March, 1853, and all rights in any wise thereby granted, or intended to be granted, and conveying to Emanuel Hise all right, title, interest, and estate whatsoever of the defendants in and to the lands in question. From this decree an appeal was allowed the Shenandoah Land and Anthracite Coal Company to this court.

The question to be considered is, what is the true construction of this agreement of March 15, 1853 ?

The contention of appellant is that by this agreement Nicholas acquired title to all the minerals on the lands of Sheffer

to which the agreement had reference, for the period of 99 years, with the additional right of renewal for a like term, and that the question of abandonment does not enter into the case; in other words, that this agreement is irrevocable. This contention cannot be maintained. The record shows that no consideration passed from Nicholas to Sheffer when the agreement was made, and therefore the real consideration moving Sheffer to enter into the agreement was the one-fourth of the profits of the minerals to be mined from this land. Nicholas might never have taken any minerals from the land, and, in that event, if this agreement is held to be a conveyance of the minerals therein, it would be to hold that there had been a sale of the minerals without a consideration. It is true that there is no covenant in the agreement on the part of Nicholas to mine the minerals; but, to give effect to the agreement, it must be held that the acceptance of it by Nicholas amounted to an agreement on his part to mine the minerals to be found on the property, and within a reasonable time; otherwise, the agreement might prove entirely fruitless to Sheffer and those claiming under him. *Caldwell* v. *Fulton*, 72 Amer. Dec. 766; and *Grubb* v. *Bayard*, 2 Wall. jun. 81. It has been maintained as elementary law, by decisions of this court, as well as by courts of other States, that an agreement to do something other than to pay money, no time being expressed, means a promise to do it within a reasonable time. *Cowan* v. *Radford Iron Co.*, 83 Va. 547; *Warren* v. *Wheeler*, 8 Metc. (Mass.) 97; *Atwood* v. *Cobb*, 16 Pick. 227; *Ryan* v. *Hall*, 13 Metc. (Mass.) 520; *Thompson* v. *Ketcham*, 8 Johns. 189; *Barry* v. *Ransom*, 12 N. Y. 462; and *Young* v. *Ellis*, 91 Va. 297.

Judge Lacy, in delivering the opinion of this court, construing the contract under consideration in the case of *Cowan* v. *Radford Iron Co.*, *supra*, says: "Regard should be had to the intention of the parties, and such intention should be

given effect.   To arrive at this intention, regard is to be had
to the situation of the parties, the subject-matter of the agree-
ment, the object which the parties had in view at the time,
and intended to accomplish.  A construction should be avoided,
if it can be done consistently with the tenor of the agreement,
which would be *unreasonable* or unequal, and that construc-
tion which is most obviously just is to be favored as most in
accordance with the presumed intention of the parties."
Citing *Howeth* v. *Anderson*, 25 Tex. 557 ; *Warner* v.
*Hitchins*, 5 Barb. 669 ; *Halloway* v. *Lacy*, 4 Hump. 468.

In that case the language used in the contract or agreement
between Cowan and the Radford Iron Company was, " Said
Geo. W. Cowan has this day sold," &c., and the court held
the agreement to be a " mining lease," by which the lessee
was invested with the usual mining rights ; and, although the
lessee had mined some of the minerals from Cowan's pro-
perty, and paid him a royalty thereon, it appearing that the
lessee had ceased to mine for an unreasonable time, and
announced " that they did not propose to mine iron ore at a
loss, nor would they allow others to operate this iron ore at a
profit," the lease was set aside and annulled.

In the case at bar, the language used in the agreement
provides that the minerals, &c., are assigned to Nicholas " to
farm."   Here we have an assignment of the minerals on
Sheffer's lands to Nicholas " to farm," which term " to farm,"
in the sense used, is synonymous with the term " to mine,"
and can have no other meaning or import than that Nicholas
was to mine the minerals to be found upon Sheffer's lands,
and render to Sheffer one-fourth of the profits arising there-
from, as stipulated in the agreement, and this to be done
within a reasonable time.   The evidence shows that from the
date of the agreement, March 15, 1853, down to 1875, a
period of over twenty years, Nicholas did little or nothing
toward mining the minerals on the lands in question, certainly

nothing of profit to Sheffer. And from 1875 down to the institution of this suit, neither Nicholas nor his assignee, the appellant, has done anything upon the property which rendered to Sheffer or to Hise, who claims under Sheffer, any profit whatever. It is true that after the assignment by Nicholas to appellant, in 1875, the latter commenced some operations in the mines, which were kept up at intervals until some time in 1877, but these operations yielded nothing whatever to Sheffer, or to Hise, and it plainly appears from the evidence that they were carried on entirely in the interest of the appellant, and to further a scheme of this newly-organized corporation to sell out their holdings at a speculative valuation. It further appears from the evidence that, upon the organization of this company in 1875, composed of Nicholas and four other persons, Nicholas assigned all of his rights under the agreement with Sheffer to the company in consideration of $2,500,000 of the capital stock of the company, which was its entire stock, all of which was issued to Nicholas in payment for his interest in the Sheffer property assigned to the corporation—the stock being by Nicholas afterwards distributed to himself and associates, with the exception of $300,000 of the stock, which was left in the treasury of the company. In addition to the facts shown, that no work of any character has been done by the appellant on the property since 1877, it clearly appears from the declaration of Nicholas, the president of the company, in his deposition in this cause, that the company has no purpose whatever to undertake to make any use of the minerals on the Sheffer property that would yield any profit or benefit to appellee, the present owner of the property. Says Nicholas, "It is not the purpose of the company to mine coal (on this property) unless some process is discovered whereby the mining may produce a profit without a railroad." Here is a declaration to the effect that the company does not propose

to exercise any privileges conferred by the agreement of March 15, 1853, qualified only by a highly improbable contingency. Indeed, it appears in the record, from the testimony on behalf of the appellant, that the company itself has despaired of all hope of a railroad being built to the property.

Having due regard, as we must, for the intentions of the parties, their situation, the subject-matter of the agreement, the object which they had in view at the time, and intended to accomplish, the agreement of March 15, 1853, cannot be denominated other than a " mining lease," by virtue of which Nicholas acquired only the usual mining rights, which it was his duty to exercise within a reasonable time, and in a way calculated to benefit the lessor as well as himself. This he failed to do for a most unreasonable time, and his assignment or conveyance to appellant conferred upon the latter no other or greater rights than those possessed by him. *Hodgson* v. *Perkins*, 84 Va. 711.

For nearly forty years, these parties, claiming under the agreement of 1853, had done nothing whatever in furtherance of its object, or whereby Sheffer or the appellee have been benefitted; but, on the contrary, have, in violation of their just rights, held on to this unreleased and uncancelled lease upon the records, whereby the full enjoyment of the property has been hindered. With this state of facts, coupled with the further fact that there is on the part of the appellant no present intention to mine the minerals on this property, as declared by Nicholas, it would have been unjust and inequitable to have withheld from the present owner of the property the relief sought by his bill in this cause.

It follows that we are of opinion that the decree complained of is right, and must be affirmed.

*Affirmed.*