R. C. RAWLINGS *et al* v. JOHN H. ARMEL *et al.*

**No. 13,950.** (79 Pac. 683.)

SYLLABUS BY THE COURT.

1. MINES AND MINING—*Oil and Gas Lease Construed—Estate Contingent.* Under the provisions of the oil and gas lease involved in this suit the lessee had the right to enter upon the leased premises for the purpose of exploration, and to operate, if oil or gas should be discovered; but no estate would vest in the lessee unless such minerals should be found and produced.

2. ——— *Covenant to Pay Rent Construed.* A covenant in the lease in question to pay rent, after a fixed date, for each piece of land in which wells had not been drilled and operated was not depenc₋mt upon another provision relating to the time in which drilling should begin; and such covenant was not affected by extensions of the time in which drilling might be commenced.

3. ——— *Right May be Lost by Abandonment.* The preliminary right of exploration for gas and oil under the lease in question was of such character that it might be lost by abandonment, without the lapse of time prescribed by the statute of limitations.

4. ——— *Abandonment a Question of Fact.* The question of whether a lessee under an oil and gas lease of the character of the one involved in this suit has abandoned the enterprise is one of fact, depending upon intention and conduct.

5. ——— *Evidence of Abandonment Sufficient.* Evidence that the lessee under the lease in question commenced drilling only after several extensions of time had been granted, ceased work after sinking two dry wells, removed the casing from such wells and plugged them, removed its material, machinery, and tools, went away from the land and neglected to pay rent then due, is sufficient to support a finding of abandonment.

6. ——— *Subsequent Tender Will Not Restore Rights.* Whenever an abandonment of land leased for oil and gas purposes in fact occurs the lease is subject to cancelation, and a subsequent tender of overdue rent will not restore the lessee's rights, against the will of the lessor.

7. ——— *Forfeiture for Non-payment of Rent.* A general forfeiture clause in a lease of land for oil and gas purposes is to be strictly construed for the benefit of the lessor, and the lease may be forfeited for non-payment of rent, in the absence of a stipulation making time of the essence of the contract, if, under all the circumstances, it would not be inequitable or unconscionable to do so.

Error from Allen district court; OSCAR FOUST, judge. Opinion filed February 11, 1905. Affirmed.

## STATEMENT.

THE plaintiff executed and delivered to the Kansas & Texas Oil, Gas and Pipe-line Company a gas and oil lease of his land, certain provisions of which, material to this controversy, are as follow:

"That the party of the first part, for and in consideration of the covenants and agreements hereinafter contained, to be performed and kept by the said second party, does hereby lease and let unto the party of the second part the exclusive right for two years from date hereof to enter upon and operate for and to procure oil and gas upon the following-described premises, situated in Allen county, Kansas, to wit:

. . .

"The party of the second part agrees to deliver to the party of the first part one-eighth ($\frac{1}{8}$) of the oil realized from said premises in tanks at the well, without cost to him, or pay the market price therefor in cash, at the option of the first party.

"If oil or gas is found on these premises all rights, benefits and obligations secured hereby shall continue so long as either can be procured in paying quantities and said second party is operating all oil-wells.

"If gas is found in any well or wells, first party is to have on demand sufficient gas for his own use on said farm of which said premises are a part and for the use of his tenants free, and the second party is to have the remainder, and shall pay the first party therefor one hundred and fifty dollars ($150) per year for each well that does not yield over one million cubic feet of gas per day and for each additonal one hundred thousand feet of gas that such well shall produce per day said second party shall pay to the said first party fifteen dollars ($15) per annum, the same to be paid annually in advance, whether the same be used or not. . . .

"In case no oil- or gas-well be drilled within thirty

days from the 21st day of May, 1902, on said premises, all rights and obligations under this contract shall cease, at the option of the first party, unless the second party shall pay to the first party the sum of fifty dollars ($50) on or before twelve o'clock on June 20, 1902, it being hereby agreed that such payment shall entitle the second party to an extension of thirty days to the time limit to begin drilling as above set forth.

"The party of the second part further agrees to be operating wells on each tract of land herein described on which oil or gas is found in paying quantities within two years from this date, and to continue to operate the same until said wells are exhausted. And to pay as rental of said lands for the uses herein specified until said wells are so operated the sum of one dollar ($1) per acre per annum after six months from the 21st day of May, 1902, for each piece of land in which wells have not been drilled and operated, same to be paid in advance each year.

"Second party agrees to drill not less than six (6) wells on said premises within eight months from date hereof, if oil is found in paying quantities. . . .

"The party of the second part shall have the right at any time after two years, if oil or gas is not found in paying quantities, to terminate this lease by notice in writing, surrendering the lease, and, if the same has been recorded in the office of the register of deeds of Allen county, by releasing the same of record, and shall thereafter be relieved from further obligations and liabilities under the same. . . .

"Upon the failure of the second party to comply with any of the conditions, covenants and agreements herein contained, this lease shall at once become null and void at the election of the said first party. And in that event said second party shall forfeit the right to remove any of the pipes, pipe-lines, machinery and structures necessary for the production, preservation and transportation of oil and gas produced on said premises, placed thereon by said second party, and the same shall become the property of said first party."

Written agreements for several extensions of time

Rawlings v. Armel.

in which to commence drilling were made upon cash considerations. The first extension was made under the terms of the lease itself ; all others were made as the result of negotiations between the parties. The contracts for these extensions recited that they were given for extensions of time to begin drilling operations. None of them purported to affect or modify any other provision of the lease. The last one is as follows :

"FIELD OFFICE K. & T. OIL, GAS AND PIPE-LINE CO.

"To J. H. Armel, Dr. No. 27. To amount of account as per bill and statement. September 19th, 1902. In consideration of the payment of $37.50, receipt of which is hereby acknowledged, extension of time to begin drilling for oil and gas under lease dated May 21st, 1902, is granted. This further extension of 15 days being from Sept. 19th to Oct. 4th, it being understood that unless a well is actually commenced by noon of Oct. 4th, 1902, said lease shall be subject to forfeiture at my option, as by the original terms of the same, and this extension shall not be construed to be in conflict with or alter any of the original agreements excepting as to time to commence drilling. Received from the K. & T. Oil, Gas and Pipe-line Co. $37.50 in full payment of above account.

(Signed)    J. H. ARMEL."

Before noon of October 4 the lessee commenced drilling, and proceeded to sink two dry holes. About November 26 it pulled the casing from these holes, plugged them, ceased all further exploratory efforts, removed all material, machinery and tools from the land, and left the premises. On January 3 the lessor notified the lessee that the lease was forfeited for a failure to comply with its conditions. Later he demanded a return of the lease and a release of the premises to him. Subsequently to February 19, 1903, the lessee assigned the lease to the defendants Rawlings, Rosenthal, Light, and Breyfogle. On February

28, 1903, the lessor notified the assignees of the lease that it was null and void. No rent was either paid or tendered prior to March 17, 1903, and on that day the lessor commenced an action against the lessee and its assignees to forfeit and cancel the lease, alleging abandonment and non-payment of rent as grounds for relief. On the trial the parties gave testimony in explanation of their conduct, and officers of the lessee testified that it was not the intention of the lessee to abandon the land. A tender of rent at the rate of one dollar per acre for a year was shown to have been made by the assignees of the lease on March 28. The district court found all the allegations of the plaintiff's petition to be true, and rendered a judgment canceling the lease.

The following assignments of error affecting the judgment are made in this court:

"(1) That the court erred in refusing to admit testimony offered by defendants, to wit:

"'Q. Now, during the time of those payments, as near as you can, Mr. Martin, you may simply state to the court what the understanding was between you and Mr. Armel as to what the purport of those extensions were.'

"(2) That the court erred in refusing to allow the following question to be answed, to wit:

"'Q. Now, did subsequent drilling, or has subsequent drilling, since that time, indicated whether or not the probability was there is oil between those two wells?'

"(3) That the court erred in refusing to allow the following questions to be answered, to wit:

"'Q. State to the court whether or not you, in your actions, had any thought or intention of abandoning the Armel land.'

"Q. State to the court whether or not the K. & T. company (meaning the Kansas & Texas Oil, Gas and Pipe-line Company) up to the time it sold this lease did abandon it.'

"(4) Findings, orders, judgments and decree of said court are not sustained by sufficient evidence.

"(5) The court erred in overruling the motion for a new trial."

*Farrelly & Evans*, and *Lapham & Brewster*, for plaintiffs in error.

*G. A. Amos*, for defendants in error.

The opinion of the court was delivered by

BURCH, J.: The understanding of the parties referred to in the question set out in the first assignment of error was expressed in written instruments; hence, the question was manifestly improper.

The record discloses that the drilling referred to in the question set out in the second assignment of error was done upon land other than that in controversy, subsequently to the time the rights of the parties to this suit became fixed; hence, the question was manifestly improper.

It was not prejudicial error to exclude an answer to the first question set out in the third assignment of error because the witness had already, without objection, stated his thoughts and intentions regarding an abandonment of the Armel land, and later in his examination went over practically the same ground again.

The second question set out in the third assignment of error stated the principal issue in the case. To permit an answer would have been to allow the witness to usurp the function of the judge and decide the controversy; hence, the question was manifestly improper.

The fourth and fifth assignments of error assert that the judgment is not sufficiently sustained either by fact or by law.

The court found generally for the plaintiff, and hence found that the lessee abandoned the leased premises. The question of abandonment is one of fact, depending upon intention and conduct. (Thorn. Oil & Gas, § 137; Bryan, Petr. & Nat. Gas, § 205; see, also, 1 Snyd. Mines, § 512.) If, when the lessee removed the casing from the dry wells, removed its material, machinery, and tools, went away from the land, and neglected to pay rent, it did so intending never to return, the court was justified in finding that it abandoned the project.

The lease bore a well-understood character. The contemplated benefit to the lessor consisted in royalties. The provision for rent was not, as in *Rose v. Lanyon*, 68 Kan. 126, 74 Pac. 625, an alternative which the lessee might adopt and thereby relieve itself from drilling and operating. Its purpose was to incite speedy development of the property, and, hence, early payment of royalties. The lessee had the right to enter and explore, and to operate, if oil or gas should be discovered, but no estate in the land would vest unless mineral should be found and worked. Until that time the preliminary right was of such a character that it could be lost by abandonment, without the lapse of time prescribed by the statute of limitations.

The stipulation for surrender by the lessee after two years did not imply that title should vest before oil or gas should be found and produced. It merely enabled the lessee to relieve itself of the burden of operating an unprofitable property if oil or gas should not be found in paying quantities.

The tender of rent made after suit was commenced was unavailing. When abandonment in fact occurred, the lease was subject to cancelation. Rent was due when the lessee deserted the land. The right to pay

was abnegated in the abandonment, and the lease could not be revivified against the will of the lessor by a belated offer to pay.

The parties were before the court in person. They gave interpretations of their conduct and versions of their claims. The facts and circumstances of the removal in themselves afforded some evidence of abandonment. It was the duty of the court to weigh those facts in connection with all the other evidence in the case. The presumption is that it did so. There is substantial evidence to support the judgment on the ground of abandonment and this court cannot interfere.

The case is argued as if the judgment of forfeiture were based upon the fact of the non-payment of rent at the expiration of six months from the date of the lease, as well as upon the fact of abandonment, and such may have been the decision. If so, it was correct. Although time was not expressly stated to be of the essence of the contract, yet the stipulation for forfeiture is to be strictly construed for the lessor's benefit, and it is not shown that any inequitable or unconscionable result attends the declaration of forfeiture in this case. (*Edwards v. Gas Co.*, 65 Kan. 362, 69 Pac. 350.)

The assignees of the lease contend that the time for the payment of rent was extended until six months after the latest date agreed upon for commencing drilling operations. Such an interpretation of the lease and extension agreements is unwarranted.

The covenant in the lease to pay rent is separate and distinct from the provision relating to the time for beginning to drill. It requires rent to be paid after six months from May 21, 1902, for each piece of land in which wells had not been drilled and operated.

The lease itself provided for one extension of time in which to begin drilling, but such provision is followed by the peremptory requirement that rent be paid, even though the commencement of operations be delayed. The subsequent extension agreements belong to the same category with the one contained in the lease itself. Neither in express terms nor by necessary implication do they relate to any subject except that of time in which to institute operations, and the covenant to pay rent remains unchanged.

From all this it follows that upon either theory of the case the judgment of the district court must be affirmed, and it is so ordered.

All the Justices concurring.