# CHARLESTON.

### CHANDLER v. FRENCH *et al.*

Submitted January 27, 1914.    Decided February 10, 1914.

1. MINES AND MINERALS—*Mining Lease—Title to Minerals in Place.*

     A mining lease for a term of 99 years in consideration of $1.00 and the payment to the lessor of 3 cents per ton of coal and other minerals mined and shipped, containing no covenant by the lessee to commence mining at any certain time, does not vest title in the lessee to the mineral in place.    (p. 659).

2. SAME—*Mining Lease—Implied Covenant—Cancellation of Lease.*

     In such lease there is an implied covenant by the lessee to begin mining within a reasonable time, and if he does not do so he will be presumed to have abandoned his right, and a court of equity will, at the suit of the lessor, cancel the lease as constituting a cloud on his title.    (p. 662).

3. SAME—*Mining Lease—Construction.*

     The fact that the lease is upon land so remote from a railroad that shipment of the coal is impracticable at the date of the lease, does not affect the question of the reasonableness of the time when it does not appear that the parties contracted with reference to some particular railroad which would afford shipping facilities, the building of which was then contemplated and has since been completed. (p. 662).

Appeal from Circuit Court, Wyoming County.

Suit by Walter T. Chandler against Nellie J. French and others.    From decree for plaintiff, defendants appeal.

*Affirmed.*

*Brown, Jackson & Knight,* and *Campbell, Brown & Davis,* for appellants.

*M. O. Litz,* and *Harold A. Ritz,* for appellee.

WILLIAMS, JUDGE:

Plaintiff and defendant, James D. Lowry, both claim the mineral underlying a tract of 375 acres of land situate in Wyoming county, mediately, under separate deeds from John P. Bailey as a common source of title, the plaintiff claiming under a deed made to Grigsby and Gooch on the 26th of September, 1885, and defendant under a mineral lease made to W. A. French on the 23rd of July, 1881, for a term of 99 years. Claiming that the deed to French was only an option, or at most a mining lease, and that it had been forfeited or abandoned by him, plaintiff brought this suit to have it, and its subsequent assignments, declared null and void, on the ground that recent assertions of title to the mineral, by the claimants under French, constituted a cloud upon his title. From a decree granting relief to plaintiff, James D. Lowry, one of the defendants, has appealed.

The facts are not disputed. The lease to French was prior to the deed to Grigsby and Gooch, and was duly recorded. The case depends upon two questions, viz.: (1) Was the deed to French only a mining lease, or did it vest him with title to the mineral for a term of 99 years? (2) If only a mining lease, have the lessee's rights thereunder been forfeited or abandoned?

Counsel for appellant strenuously insist that the lease to French operated to vest in him an *estate* in the mineral for a term of 99 years, and that it could not be divested by abandonment, or forfeited for failure to begin mining operations within the term. They cite decisions from the court of appeals of Pennsylvania, and of one or two other states supporting their contention. The briefs, both pro and con, show an unusual amount of care, research and labor, as well as ability, in their preparation. There are, however, many propositions discussed by counsel for appellant which need not be considered for the reason that we hold that the lease did not vest in French title to the mineral in place. Much of the brief is devoted to a discussion of the manner of divesting of estates, which does not apply to a mining lease which may be abandoned or surrendered by the lessee at any time. The lease in question reads as follows, viz.:

"This Deed made this 23rd day of July, 1881, between John P. Bailey, of the one part, and W. A. French.

Witnesseth: That the said John P. Bailey doth hereby demise and lease unto the said W. A. French, his personal representatives, successors and assigns, all coal and mineral rights and privileges whatsoever, contained on, in and beneath the surface, of all and every part, portion and acre of his, the said John P. Bailey's farm, lands, grounds, property and possessions, lying and being in the County of Wyoming, W. Va., on the waters of Guyandotte River, adjoining the lands of Addison Milam and others, and containing 375 acres, be the same more or less.

To have and to hold the same from the date of the signing and concluding of these presents, for the term, period and space of ninety-nine (99) years, hence ensuing—the said W. A. French, his personal representatives, successors and assigns, shall & will truly pay, or cause to be paid, to the said John P. Bailey, the lessor thereof, during the said term, period and space, mentioned; for and in consideration of said demise and lease, a rent of 3 cents per ton of 2240 lbs. for each and every ton of coal and other minerals mined and shipped therefrom, and the said W. A. French, his personal representatives, successors and assigns, may and shall have and enjoy free and full access, ingress and egress into, on, under, over and beneath said lands, for the purpose of opening, mining and shipping the coal and other minerals thereon and therein, and to build and erect the necessary buildings and machinery, to operate and work the same with undisturbed right of way for all necessary road ways to and from their, or his said mines and works, and for the further consideration of one dollar to me, the said John P. Bailey, in hand paid by the said W. A. French, the receipt whereof is hereby acknowledged by the said John P. Bailey to be binding upon him, his heirs, administrators, successors and assigns, the said parties have hereunto signed their names and affixed their seals, the day and date above written.

John P. Bailey.          (SEAL).
Wm. A. French.          (SEAL)."

No mining operations were ever begun by French or those claiming under him, nor did he or they cause the mineral to

be separately charged to him or them on the land books of Wyoming county for taxation. Both surface and mineral continued to be assessed together, in the name of Bailey, until his conveyance of the mineral to Grigsby and Gooch in 1885, after which it was charged to them; and has continued to be charged to them, and to those claiming under them, down to the time this suit was brought.

The lease did not vest in French an estate in the coal and other minerals in place. It does not in terms purport to convey title to the mineral. Counsel for appellant insist, however, that, properly construed, the writing does vest in the lessee an estate in the mineral for a term of 99 years. In one sense such a lease is a sale of the mineral substance, because it authorizes the lessee to extract it and then dispose of it as he pleases. But, until he does so, the title thereto remains in the lessor, subject to the right of the lessee to sever it from the other part of the realty. That French was vested with no present title to the coal in place is borne out by the following authorities: *Steelsmith* v. *Gartlan*, 45 W. Va. 84; *Smith* v. *Root*, 66 W. Va. 633; and *Harris* v. *Michael*, 70 W. Va. 357. There is a clear legal distinction between an absolute conveyance of the mineral in place, and the grant of a mining right to enter upon the land and convert the mineral into personalty and dispose of it. In one case there is a severance of the title to the realty; in the other there is not, although the mining right entitles the lessee to extract every particle of the mineral. The grant is not of the mineral in place, but of "all coal and mineral rights and privileges." The consideration to the lessor is not a definite sum of money, paid, or to be paid at a certain future time, but "a rent of 3 cents per ton of 2240 lbs. for each and every ton of coal and other minerals mined and shipped therefrom," which was to be paid "during the said term," that is, continuously throughout the term, or as long as coal is mined. The contract contains no provision for payment of minimum royalties in the event of failure to mine; mining had to be begun before the lessor could demand any of the consideration for the lease. It can not be concieved, therefore, that the contract was made merely to enable the lessee to speculate wholly for his own profit, or that the lessor intended to incumber his property for a period of 99

years with a lease from which he might derive no benefit whatever until near the end of the term. The purpose in view was development of the property, and the parties evidently contemplated that mining operations should be begun within a reasonable time after the making of the agreement. True the lessee did not expressly covenant to begin mining at any certain time, nor does the lease contain any clause forfeiting it for failure to mine within a reasonable time. But the law, as it has been understood and applied by this court, implies such a covenant in every mining lease reserving to the lessor, as a consideration therefor, a royalty measured by the amount of mineral produced. *Smith* v. *Root*, 66 W. Va. 633, and cases cited in opinion at page 639. The consideration for the lease was 3 cents per ton of coal, and it had to be mined before the consideration could be ascertained or demanded. Mining leases are usually made for long terms; but, unless expressly so provided, it is not optional with the lessee throughout the term when he will begin operations. The length of term is intended to enable the lessee to complete mining operations after they have been commenced, and not to make it optional when he will begin. What is a reasonable time in any given case depends largely upon its circumstances, and whether the lessee has been diligent in his efforts to develop.

At the date of this lease there was no railroad within many miles of the land, and consequently no shipping facilities. But within a few years thereafter the Norfolk & Western Railroad was built within some ten or twelve miles of it; and, within recent years, the Virginian Railroad has been built much nearer to the property. Counsel for defendant insist that, as the lease contemplated shipment of the mineral to market and there was then no means of shipping it, the parties must have contemplated that fact, and must have intended that mining was not to commence until a railroad was built near to the property, and that delay to mine until such time is reasonable. They insist that it was not feasible, or practicable, to ship the coal to market until the Virginian Railroad was built. Evidently the parties knew that the property was then too remote from a railroad to make the mining of coal profitable. But, is it not fair to presume that they contemplated that a railroad would be shortly thereafter built

through the territory in which the land lay, and that, if one was not shortly built, the lease should terminate? The record discloses that, about the time the contract was made, there was neighborhood talk that the Norfolk & Western Railroad might be built near to the property. May it not be presumed that they contracted in anticipation that it would run near enough to the land to make the mining of the coal feasible and that, if it did not, the lease was to terminate? It is certainly more reasonable to suppose that such was their understanding than that they intended to tie up the property without development, possibly for a period of 99 years, waiting for the building of some railroad then unheard of and probably not even conceived in the mind of any man. In view of the extremely low rate of royalty, it is not unreasonable to suppose that the lessor executed the lease with the hope and the expectation that the lessee might, by acquiring leases on enough other land, induce the building of a railroad to the property. It does not follow, because there was no railroad near when the lease was taken, that the parties intended that it should remain in force indefinitely, until one should be built. The lease was executed more than twenty-five years before this suit was brought, and no mining operations were begun. That is an unreasonable time to wait for development. In respect to the lessee's duty to develop there is no distinction between an oil and gas lease and a coal lease. The difference in the nature of the minerals, with respect to which the right is given, furnishes no basis for applying to the two kinds of leases different rules of construction. That the existance of one is known and the other unknown, is no reason why the lessee should not be as diligent to develop in the one case as in the other. In *Urtman* v. *Lowther* Oil Co., 53 W. Va. 500, the fact that there were no pipe lines nearer than ten miles, was held not to be an excuse for failure to develop. See opinion of Judge BRANNON at page 507.

Being vested only with a right to mine and dispose of the product, and not with title to the mineral in place, it is well settled that such right may be lost by abandonment, and that failure to begin mining in a reasonable time evinces intention of lessee to abandon his right. By their failure for more than twenty-five years to mine the coal, the intention of French,

and those claiming under him, to abandon their right is clearly established. After a lapse of a reasonable time the lease became a mere option which either party could terminate at his election. That the lessor chose to terminate it is shown by his conveyance of the coal to Grigsby and Gooch in 1885. *Crawford* v. *Ritchey*, 43 W. Va. 252, was a suit involving the rights of parties to an oil and gas lease, giving the lessee the right to produce oil and gas for twenty years, or as long thereafter as they were found in paying quantities, and containing a covenant to drill a well within a specified time, which was only a few months after the date of the lease, and the court there held that the failure to drill for seven years raised a presumption of abandonment and justified the lessor in suing to cancel the lease. There is no substantial difference between that case and the one now before us. Both are founded upon a breach of covenant to mine with reasonable diligence. That the broken covenant was expressed in the lease in that case and is only implied in this, can make no difference. A covenant is no less binding because implied. No time is stated for the payment of the royalty, nor is there any provision compensating the lessor for failure to mine. It was never contemplated that payment of the consideration might be postponed for an unreasonable time, merely at the will of the lessee. So far only as it relates to vesting of rights the contract was executed, but, concerning the thing to be done under it, it remained executory. It was a working contract; and in order to continue it in life it was necessary that the thing agreed to be done, should have been begun within a reasonable time and prosecuted with reasonable diligence.

In *Cowan* v. *Radford Iron Co.*, 83 Va. 547, there was involved a mining lease similar to the one in this case in that it fixed no time for the commencement of operations, and dissimilar, in that it had no limit to its duration. No development had been begun within five years, and the lessor sued to cancel the lease on the ground that there had been an abandonment of it for failure to operate, and was granted relief.

In *Shenandoah Land &c. Co.* v. *Hise*, 92 Va. 238, the mining lease was also very similar to the one we are now considering. It was for a term of 99 years, and gave the lessee the right to mine all minerals of whatsoever description found in

the lessor's land, in consideration of his receiving one-fourth of all the profits that might be obtained therefrom. The court held that it was the lessee's duty to exercise his right "in a reasonable time and in a manner calculated to benefit the lessor as well as himself," and cancelled the lease for failure of the lessee to keep his implied covenant. Similar rulings were made by the United States Circuit Court of Appeals in the following cases: *Huggins* v. *Daley,* 99 Fed. 606; and *Brown* v. *Wilmore Coal Co.,* 153 Fed. 143. The first mentioned case involved a West Virginia oil lease, and the second a Pennsylvania mineral lease.

*Bluestone Coal Co.* v. *Bell,* 38 W. Va. 297, is also very like the present case in many respects. It was a case of a coal mining lease for a term of 99 years, given for a consideration of a per ton royalty. The lessee was also given the right to cut, manufacture and dispose of merchantable timber on the land, at the price of fifty cents a thousand feet, or twenty-five cents per tree at his discretion, but no time was stipulated for commencing to mine. Sixteen or seventeen years after the lease, the lessor began cutting and marketing the timber himself, and the lessee sought to enjoin him; and the court held that the lessee's right to the timber was subordinate to, and dependent upon, the mining right, and that, by his failure to begin mining operations for seventeen years, he had abandoned all rights under the lease.

We affirm the decree.

*Affirmed.*