## CRAIN v. PURE OIL CO. et al.

Circuit Court of Appeals, Eighth Circuit.
April 12, 1928.

No. 7956.

1. **Mines and minerals ⌾48—"Minerals" include oil and gas.**

There is no question that "minerals" include oil and gas.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

2. **Mines and minerals ⌾55(2), 73—Rights granted by oil and gas deeds and leases, made in Oklahoma, where property is situated, must be determined by Oklahoma laws.**

Rights granted by oil and gas deeds and leases, made in Oklahoma, where property is situated, are to be determined by laws of that state.

3. **Mines and minerals ⌾55(1)—Right to develop oil and gas may be conveyed apart from surface.**

Notwithstanding the vagrant character of oil and gas, the right to develop them in a tract of land may be conveyed, and the ownership of the surface remain in grantor.

4. **Mines and minerals ⌾47—Oil and gas belong to landowner only while on or in his land and subject to his control.**

Oil and gas, which are fugacious in their nature, belong to owner of land, and are part of it, so long as they are on or in it and subject to his control; but his title is gone when they escape, and go into other land or come under another's control.

5. **Mines and minerals ⌾55(4)—Property in oil and gas conveyed by mining deed is not absolute until reduction to possession.**

Property in oil and gas, severed from ownership of soil by mining deeds, does not become absolute until they are reduced to possession.

**6. Mines and minerals ⟐⟐55(3)—Court must look at entire agreement, purpose thereof, and all surrounding circumstances, for parties' intention in determining whether instrument is oil and gas deed or lease.**

In determining whether instrument is deed, conveying oil and gas, or a lease, giving merely right to explore therefor, court must look at the entire agreement, the purpose to be accomplished thereby, and all the circumstances surrounding the transaction, to ascertain the intention of the parties.

**7. Contracts ⟐⟐143—Contract must be interpreted in light of its provisions.**

Every contract must be interpreted in the light of its own provisions.

**8. Contracts ⟐⟐147(1)—Construction of contract more reasonably in accord with parties' intention should be adopted.**

The construction of a contract which is more reasonably in accord with the parties' intention should be adopted.

**9. Mines and minerals ⟐⟐55(3)—Instruments reciting conveyance of oil and gas, but requiring grantee to proceed only if found in paying quantities, and to pay royalty from oil produced, etc., held mere leases, though not requiring grantee ever to search for oil and gas.**

Instruments reciting sale and conveyance of all oil and gas under described land, but containing provisions as to how grantee must proceed after discovering oil or gas, requiring him to proceed only if they were found in paying quantities and to pay royalty out of oil produced, and permitting him to remove fixtures placed for use in developing oil and gas, held, not deeds, but mere leases, though denominated oil and gas deeds, and not requiring grantee ever to search for oil and gas.

**10. Mines and minerals ⟐⟐78(1)—Lessee or his assignee held bound to make diligent search for oil and gas within reasonable time, in absence of provision requiring search.**

In absence of provision in oil and gas lease requiring grantee to search for oil and gas, he and his assignee were under obligation to make diligent search therefor within reasonable time, and could not hold lease merely for speculating purposes.

**11. Mines and minerals ⟐⟐78(2)—Oil and gas leases held abandoned, and rights of lessees and their assignees barred by laches, in absence of entry on land, payment of taxes, or development thereof for 15 years.**

Oil and gas leases held, completely abandoned, and rights of lessees and their assignees barred by laches, where they never went on land, paid any taxes thereon, sank any wells, or spent any money in development for 15 years, and never claimed anything thereunder until after dissolution of corporation to which leases were assigned and forfeiture of its charter.

**12. Mines and minerals ⟐⟐73—Under Oklahoma laws, oil and gas leases should be construed most strongly against lessees.**

Under the laws of Oklahoma, oil and gas leases should be construed most strongly against the lessees.

25 F.(2d)—52½

**13. Mines and minerals ⟐⟐73—Under Oklahoma laws, oil and gas leases should be construed to promote development and prevent delay, where terms permit.**

Under the laws of Oklahoma, oil and gas leases should be construed so as to promote development and prevent delay, where the terms thereof will permit it.

**14. Quieting title ⟐⟐7(2)—Landowner and lessee held entitled to removal of prior abandoned oil and gas leases as clouds on title.**

Owner of land and corporation, to which he executed oil and gas lease after executing leases to others, who abandoned them and estopped themselves to question such owner's and corporation's rights by failure to develop land for 15 years, held, entitled to removal of such leases as clouds on title.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Consolidated actions by the Pure Oil Company and Frank H. Reed, and by the Pure Oil Company alone, against Allen Crain, trustee of the stockholders and successors of the Southwestern Mining Company. Decree for plaintiffs, and defendant appeals. Affirmed.

Vincent F. Hiebsch, of Wichita, Kan. (W. M. Haulsee, of Wewoka, Okl., on the brief), for appellant.

Alvin Richards, of Tulsa, Okl. (Floyd A. Calvert, of Tulsa, Okl., on the brief), for appellees.

Before KENYON, Circuit Judge, and SCOTT and SYMES, District Judges.

KENYON, Circuit Judge. This appeal involves two actions brought in the United States District Court for the Eastern District of Oklahoma, one by the Pure Oil Company and Frank H. Reed, and the other by the Pure Oil Company, against Allen Crain, trustee of the stockholders and successors of the Southwestern Mining Company, to quiet title to certain lands in Seminole county, Oklahoma. The cases were consolidated in the trial court. In one of the cases it was sought to quiet title against an attempted conveyance of mineral rights in certain land in Oklahoma by an instrument entitled "Oil and Gas Deed," executed on May 30, 1906, by July and Bettie Sancho to J. N. McNabb, and assigned by him to the Southwestern Mining Company. The other case sought the same relief as to a similar conveyance to other land in Oklahoma, executed on June 13, 1906, by Davis Cyrus and wife to J. N. McNabb, and by him also assigned to the Southwestern Mining

Company. Appellees' claim as to one of the tracts of land, designated as the Sancho land, is that Frank H. Reed is the legal owner in fee simple, and that he or his assignee is in actual and peaceable possession thereof; that he executed an oil and gas lease to the Ohio Cities Gas Company, which subsequently changed its name to the Pure Oil Company. As to the other land involved, known as the Davis Cyrus allotment, one C. E. Wolcott purchased the same in 1907, and has been in possession since that date, up to the time of executing an oil and gas lease to the Ohio Cities Gas Company. In the actions brought by Reed and the Pure Oil Company it was claimed that the alleged conveyances from Sancho and Cyrus to McNabb were void, and had been abandoned by the parties thereto.

March 29, 1913, Sancho and wife executed on the same land covered by their conveyance to McNabb an oil and gas lease to one Seran, who is one of the shareholders joining in the application for the appointment of a trustee. Seran released this lease on April 6, 1917, at the request of Reed. Mr. McNabb, one of the stockholders who brought about the appointment of Crain as trustee, and who would share in a favorable judgment for the trustee, had been secretary of the Southwestern Mining Company, the business of which was to secure oil and gas conveyances. It ceased to function and its charter was forfeited by the state of Oklahoma. Qn September 23, 1925, the district court of Seminole county, Oklahoma, appointed Allen Crain trustee of the stockholders and successors of said company.

The trial court found that Reed was the legal owner in fee simple and in the actual peaceable possession of the premises which he had secured from the Sanchos, viz. the west half of the northwest quarter of section 34, township 9 north, range 7 east, containing 80 acres, more or less, and that the Pure Oil Company was the owner of a valid and subsisting gas and mining lease thereon. It also found that the Pure Oil Company was the owner of a valid and subsisting oil and gas mining lease upon the east one-half of the southeast quarter of the northeast quarter and the northeast quarter of the northeast quarter of the southeast quarter of section 36, township 9 north, range 7 east, Seminole county, Oklahoma, and that the so-called oil and gas deeds executed by the Sanchos to McNabb and by Cyrus and wife to McNabb were in fact licenses or leases, were void, and should be removed as clouds upon complainant's titles; that appellant and those claiming under him were barred and estopped by laches, and that there was an abandonment on their part of any rights under said leases.

It is the contention of appellant that there was a severance of the mineral rights in these tracts of land by the instruments of conveyance to McNabb and by him assigned to the Southwestern Mining Company, that there could be no abandonment or forfeiture, and that adverse possession sufficient to bar the rights of the Southwestern Mining Company under the statute of limitations had not been shown.

It is the contention of appellees that the 1906 conveyances to McNabb were in fact mining leases or licenses, that operation under the same was entirely at grantee's option, and that the leases have been abandoned and forfeited by the failure of grantees to take any steps thereunder for more than 15 years. [1, 2] We pass directly to the vital question in this case, i. e.: Were the conveyances to McNabb by the owners of the respective pieces of land such, as to bring about a severance of the mineral rights therein from the ownership of said land? There is no question that minerals include oil and gas. Barker v. Campbell-Ratcliff Land Co. et al., 64 Okl. 249, 167 P. 468, L. R. A. 1918A, 487. The instruments were made in Oklahoma, the property is there situated, and the rights granted by these instruments are to be determined by the laws of that state.

[3, 4] It is well settled that, notwithstanding the vagrant character of oil and gas, the right to develop the same in a tract of land may be conveyed, and the ownership of the surface remain in the grantor. Oil and gas have peculiarities different from other minerals. They are fugacious in their nature. To-day they may be under the surface of one's land, and to-morrow have vanished to a place under the surface of another's land. Their wanderings are uncertain. As said in Westmoreland & Cambria Nat. Gas. Co. v. De Witt et al., 130 Pa. 235, 249, 18 A. 724, 725, 5 L. R. A. 731, "They [oil and gas] belong to the owner of the land, and are part of it, so long as they are on or in it, and are subject to his control; but when they escape, and go into other land, or come under another's control, the title of the former owner is gone. Possession of the land, therefore, is not necessarily possession of the gas"— and quoted with approval by the Supreme Court in Ohio Oil Co. v. Indiana, 177 U. S. 190, 205, 20 S. Ct. 576, 582 (44 L. Ed. 729); which also quoted from Jones v. Forest Oil Co,. 194 Pa. 379, 44 A. 1074, 48 L. R. A. 748, the following: "From these cases we conclude that the property of the owner of

lands in oil and gas is not absolute until it is actually within his grasp, and brought to the surface."

We quote from a few of the Oklahoma cases bearing on the general subject:

Barker v. Campbell-Ratcliff Land Co. et al., 64 Okl. 249, 250, 167 P. 468, 470, L. R. A. 1918A, 487: "Under the weight of authority, the right to go upon the land for the purpose of prospecting and taking therefrom the oil and gas is a proper subject of sale, and may be granted or reserved. The title to the oil and gas becomes perfect, when discovered and reduced to actual possession."

Rich v. Doneghey et al., 71 Okl. 204, 206, 177 P. 86, 89, 3 A. L. R. 352: "At the time of its execution the plaintiffs were the owners in fee simple of the land. By virtue of such ownership they had, on account of the 'vagrant and fugitive nature' of the substances constituting 'a sort of subterranean feræ naturæ' (In re Indian Territory Ill. Oil Co., 43 Okl. 307, 142 Pac. 997), no absolute right or title to the oil or gas which might permeate the strata underlying the surface of their land, as in the case of coal or other solid minerals fixed in, and forming a part of, the soil itself (Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729). "But with respect to such oil and gas, they had certain rights designated by the same courts as a qualified ownership thereof, but which may be more accurately stated as exclusive right, subject to legislative control against waste and the like, to erect structures on the surface of their land, and explore therefor by drilling wells through the underlying strata, and to take therefrom and reduce to possession, and thus acquire absolute title as personal property to such as might be found and obtained thereby. This right is the proper subject of sale, and may be granted or reserved."

Wright et al. v. Carter Oil Co. et al., 97 Okl. 46, 47, 223 P. 835, 836: "Certain principles relative to oil and gas rights which are well settled are: First. That oil and gas are fugacious in their nature. Second. That oil and gas belong to the owner of the land and are a part of it so long as they are on it or in it, or subject to his control; but when they escape and go into other land, or come under another's control, the title of the former owner is gone. In other words, property in the oil and gas does not become absolute until they are reduced to actual possession by being brought to the surface and then controlled. Third. The right to reduce oil or gas to possession is a valuable property right. * * * There is nothing in these well-recognized principles of the law of oil and gas which prohibits the making of a conveyance such as the so-called mineral deed which is the subject of construction in this action. It does not pass title to the oil and gas in place, but it does convey an undivided interest in the property of the owner of the fee in and to the oil and gas rights, subject only to a subsisting oil and gas lease."

See also, Priddy v. Thompson, 204 F. 955, 960, where this court said: "Oil and gas in the earth, unlike ore and coal, are fugacious and are not susceptible to ownership distinct from the soil. A grant by lease or deed of the oil or gas in a specified tract of land and of the right to occupy and use so much of the surface of the land only as may be necessary to prospect for and remove the gas and oil is not a grant of the oil and gas in the land, but of such a part thereof only as the grantee finds and reduces to possession. It vests no title to any oil or gas which he does not extract and reduce to possession, and hence no title to any corporeal right or interest."

[5] If these instruments are mining deeds there was a severance of the rights to the minerals from the ownership of the soil. Just when title to the oil and gas would vest is not important. The Oklahoma rule appears to be that the property in them does not become absolute until they are reduced to possession. Kolachny v. Galbreath et al., 26 Okl. 772, 110 P. 902, 38 L. R. A. (N. S.) 451; Frank Oil Co. v. Belleview Gas & Oil Co. et al., 29 Okl. 719, 119 P. 260, 43 L. R. A. (N. S.) 487. See, also, Lovelace et al. v. Southwestern Petroleum Co. et al. (C. C. A.) 267 F. 513; 29 A. L. R. 586. A deed of conveyance of oil and gas in certain property is quite distinct from a lease giving merely the right to explore for the same, and whether an instrument is a mining deed or a mining lease is not always easy of determination.

[6-8] In construing the instrument a court must look at the entire agreement, the purpose to be accomplished thereby, and all the circumstances surrounding the transaction in order to ascertain the intention of the parties, which is the guiding star of interpretation, and every contract must be interpreted in the light of its own provisions. The construction which is more reasonably in accord with that intention should be adopted. The rule is stated in Withington v. Gypsy Oil Co., 68 Okl. 138, 140, 172 P. 634, 635, as follows: "We must also bear in mind that it is the duty of the court to place itself, as far as possible, in the position of the parties at the

time the contract was entered into; then to consider the instrument itself as drawn, its purposes and the circumstances surrounding the transaction, and, from a consideration of all these elements, to determine upon what sense or meaning of the terms used their minds actually met." Prowant et al. v. Sealy et al., 77 Okl. 244, 187 P. 235; Carder v. Blackwell Oil & Gas Co., 83 Okl. 243, 201 P. 252; Cotner v. Mundy, 92 Okl. 268, 219 P. 321.

[9] So we look to the instruments themselves to ascertain what the parties thereto intended to do. Each of the McNabb conveyances is denominated "Oil and Gas Deed." They recite a consideration of $1 and "further consideration hereinafter stated." There is no provision in them for abandonment. There is a provision for royalties to be paid out of production; also permitting grantee to remove fixtures placed there for the purpose of drilling for oil and gas. As both are alike our references will be to the one of May 30, 1906, which we term the Sancho conveyance. From this we quote:

"This deed, made this 30th day of May, 1906, by and between July Sancho and Bettie Sancho, parties of the first part, and J. N. McNabb, of Wewoka, I. T., party of the second part, witnesseth: That for and in consideration of the sum of one dollar, to them in hand paid, the receipt of which is hereby acknowledged and the further consideration hereinafter stated, the parties of the first part have bargained and sold, and do hereby grant, bargain, sell and convey, to the party of the second part, his heirs and assigns, all the oil and gas, and all other mineral of commercial value, now or hereafter contained in or lying under and beneath the surface of the following described land, lying and being within the Seminole Nation, Indian Territory, to wit: The west half (1/2) of the northwest quarter (1/4), section 34, township 9 north, range 7 east, and containing 80 acres of land, more or less, for him, his heirs and assigns to have and to hold forever."

If these provisions stood alone, without any modifying language or qualifying phrases, the question before us would be quite different. In Tennessee Oil, Gas & Mineral Co. v. Brown (C. C. A.) 131 F. 696, a somewhat similar question arose as to whether an instrument, which contained the words, "bargained, sold, and conveyed," in the granting clause and which contained a number of requirements as to searching for coal and other minerals and developing the same, was a deed or a lease. It was held that the same did not constitute a conveyance of the minerals to the grantee in fee, but was a mining lease requiring the grantee to search for ores within a reasonable time. The court (page 700) said: "These considerations lead us to the conclusion that the presence of words of conveyance are not sufficient to require us to hold that the effect of the instrument was to vest in Colbert the title to the timber or mineral interests in this land. The ruling intention, as ascertained from all parts of the agreement, should be given effect. It is difficult to believe that it was intended that title should pass until these minerals had been removed and as they were removed." In Kelly v. Harris et al., 62 Okl. 236, 162 P. 219, an instrument containing the words in the granting clause, "grant, bargain, sell and convey," was held to be a lease. See, also, Conover v. Parker, 305 Ill. 292, 137 N. E. 204.

We advert to some of the agreements in the Sancho instrument and set them forth:

"The party of the second part, his heirs and assigns, shall have the free and unrestricted right of ingress and egress to, from and across the surface of said land, with all materials, tools, implements, machinery and appliances of every kind whatsoever that he or they may deem necessary for the purpose of prospecting for, mining and extracting said oil, gas and all other mineral, and to have the right to use sufficient water from the premises for prospecting and operating purposes, and, if necessary, the right to drill for it on the premises.

"And if oil or gas be found on, or beneath the surface of said premises by the party of the second part, his heirs or assigns, in paying quantities, then the mining, extracting, producing and marketing of said oil and gas shall begin within one year from the date of said discovery and continue so long as the party of the second part may deem it profitable. And the party of the second part, his heirs and assigns, shall pay to the parties of the first part, their heirs and assigns, five (5) per cent. of the value, on the premises, of all oil mined, extracted or produced on or from said land. If gas is found on said land, the parties of the first part to have, on demand, sufficient gas for domestic purposes and for warming and lighting their residence on the premises; and if the party of the second part, his heirs or assigns, shall market any of said gas, it shall pay to the parties of the first part, their heirs and assigns fifty dollars per annum for each gas producing well, the yield of which is gas only, from which gas is sold. And if any coal, or other mineral of commercial

value, be found on, or beneath the surface of said land in paying quantities, and the same be mined, produced or extracted from said land and sold by the party of the second part, his heirs or assigns, he or they shall pay to the parties of the first part, their heirs and assigns, in the case of coal, a royalty of eight cents per ton, and in the case of all other minerals, the customary royalty where such mineral is mined or produced under similar conditions. All payments accruing under the provisions of this contract to be made to the parties of the first part, their heirs or assigns, on or before the fifteenth day of each month, on all oil, coal and other minerals produced, during the previous month; payments on gas wells to be made annually; all payments to be made at the office of the Wewoka Trading Company, Wewoka, Indian Territory.

"And for the considerations above stated, the party of the second part, his heirs and assigns, are hereby granted the free and unrestricted right to appropriate and use so much of the surface of said land as may be necessary to lay, erect and maintain all necessary pipes and pipe lines, tanks, structures, rods, cables, derricks, engines, railroad or other tracks, and all other fixtures and machinery used in the drilling for, pumping, producing, mining, extracting, refining, preserving, storing and transporting on and from said premises of said oil, gas, coal or other minerals, and for the digging or sinking of such prospects, air or operating shafts, as may be deemed necessary; and the party of the second part, his heirs and assigns shall have the right to remove from said premises any fixtures which he or they may have placed thereon, and the party of the second part, his heirs and assigns, shall pay for all crops, orchards, buildings or other improvements on said premises which he or they may damage or destroy.

"The parties of the first part shall have the privilege of selling said lands or leasing the same for agricultural purposes, subject to the mineral interests therein hereby conveyed."

Certainly, if this instrument was a deed, many of these provisions were superfluities. In reading the same inquiries naturally arise in the mind, viz.:

Why, if this was a deed, need there be any provision as to how grantee must proceed after discovery of oil or gas?

Why the option to proceed if oil and gas were found in paying quantities?

Why grantee would only have to proceed if he deemed it profitable so to do?

Why the royalty should be paid out of oil produced?

Why the grantee should be permitted to remove that part of the fixtures which he had placed for use in developing oil and gas?

Why the grantee need enter into an arrangement of just how he should develop minerals that he in fact owned?

On the other hand, it may be suggested that there is no provision in the instrument requiring grantee to ever search for oil and gas. This cuts both ways. It is provided that, if found, the mining, extracting, and producing must commence within one year from date of discovery, but no effort need ever be made to discover the same if this is in fact a deed, so that the Sanchos would receive $1 for the mineral interest and no other benefit, and grantees could hold the mineral rights indefinitely and never make any effort to discover oil or gas. Such construction is unreasonable, unjust, inequitable, and unconscionable. Reasonable men would not enter into any such contract, and certainly it was not the intention of the parties that grantees could indefinitely tie up the mineral rights in this land, and that any benefit to the Sanchos should be at the option of the grantee. In discussing this very thing the trial judge in the case of Tenn. Oil, Gas & Mineral Co. v. Brown, affirmed in (C. C. A.) 131 F. 696, said: "It is perfectly plain that, if this view can be sustained, it will be equally sound after the lapse of another period of 30 years, or 60 or 90 years. Under such a view clearly the bargainors, or assignees, could receive no benefit during their natural life, and it would be very probable, certainly very possible, that no benefit would accrue within a period of 100 years. It seems to me too plainly evident to admit of serious denial that an interpretation which makes such results possible cannot be sound. It is a construction which in all practical effect, for all practical purposes, implies no legal obligations upon the bargainee, or lessee, to explore, or discover, and to work the mines."

If this instrument is a deed, then it is immaterial whether any development ever takes place; the mineral rights are grantee's, and he may do as he chooses with them. If a lease, there is something for lessee to do, and that is attempt to discover and develop oil and gas within a reasonable time. There is something for lessor to receive, namely, royalty; for that is the chief object of a lease. There may be circumstances where royalty could be treated as part of the purchase money (Sturdevant et al. v. Thomson, 280 Pa.

233, 124 A. 434), but that situation is not here.

Only two cases from Oklahoma, Wright et al. v. Carter Oil Co. et al., 97 Okl. 46, 223 P. 835, and Ramey et al. v. Stephney et al., 70 Okl. 87, 173 P. 72, are cited by counsel for appellant as sustaining its position that the instruments in question were mineral deeds, severing the mineral rights from the owners and conveying them to McNabb. We have heretofore quoted from one and cited the other. Neither, in our opinion, sustains appellant's contention. None of the instruments construed in other cases cited by appellant contain the same provisions as in the instruments under consideration.

Whatever these instruments may technically be called, it seems clear, from all the terms thereof and the circumstances surrounding the transactions, that the intention of the parties thereto was merely to grant rights to go upon the lands, prospect for oil and gas and other minerals, and, if found, to develop the same and pay royalties thereon to the owners of the lands; hence they were nothing more than mining leases. We refer to some of the Oklahoma decisions on the law relative thereto:

In Kolachny v. Galbreath et al., 26 Okl. 772, 780, 110 P. 902, 906, 38 L. R. A. (N. S.) 486, the court said: "The lease relied upon by the plaintiff does not vest in him the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth—an incorporeal hereditament."

In Cotner et al. v. Mundy et ux., 92 Okl. 268, 270, 219 P. 321, 323, the court said: "Where the only consideration the lessor receives for the exclusive right to explore, develop, and remove the mineral is a royalty, whether it be oil and gas or other minerals, the courts have read into the lease the implied covenant to develop and operate with reasonable diligence."

[10] In Hitt v. Henderson et ux., 112 Okl. 194, 197, 240 P. 745, 747, the court held that, in the absence of an express provision in an oil and gas lease as to the time to begin operations the law implies a covenant to operate within a reasonable time, and also said: "Many decisions of this court have announced the rule to the effect that the right or interest created by an oil and gas lease creates only the right to explore for and take from the earth any oil and gas found; that the lessee acquired no vested estate in the premises prior to the discovery of oil or gas."

See, also, Rawlings et al. v. Armel et al., 70 Kan. 778, 79 P. 683; Kansas Natural Gas Co. v. Board of Com'rs, 75 Kan. 335, 89 P. 750; Phillips v. Springfield Crude Oil Co. et al., 76 Kan. 783, 92 P. 1119; State v. Welch, 16 Okl. Cr. 485, 184 P. 786; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 P. 260, 43 L. R. A. (N. S.) 487; Poe et al. v. Ulrey et al., 233 Ill. 56, 84 N. E. 46. McNabb or his assignee were under obligation within a reasonable time to make diligent search for oil and gas. They could not hold these leases merely for speculating purposes and maintain a do-nothing policy. Shenandoah Land & Anthracite Coal Co. v. Hise, 92 Va. 238, 23 S. E. 303; Chandler v. French et al., 73 W. Va. 658, 81 S. E. 825, L. R. A. 1915B, 561; Huggins et al. v. Daley (C. C. A.) 99 F. 606, 48 L. R. A. 320; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Thornton's Law of Oil and Gas (4th Ed.) vol. 1, § 140.

[11] Fifteen years have passed since the leases were executed. Nothing in the way of development has been done; no effort made to discover oil or gas or any other mineral. Lessees or their assignees never went upon the land, never paid any taxes thereon, sank no wells, never spent a dollar in development. Certainly this was not the intention of the parties at the time the leases were executed. It was expected there would be operations thereunder, and that they would be made profitable to the owner. We are satisfied there was a complete abandonment of these instruments on the part of McNabb and the Southwestern Mining Company, and that they have been guilty of laches, barring any rights on their part in the property. Nothing was ever claimed by them under these leases until after the dissolution of the Southwestern Mining Company and the forfeiture of its charter. Lessors indicated their intention of terminating the leases by making new conveyances. In Hitt v. Henderson et ux., 112 Okl. 194, 240 P. 745, where the only consideration of the lease was the payment of royalty, it was held that where lessee fails for 13 years to commence development abandonment is presumed. An 8 months' failure to commence development for oil and gas held sufficient to constitute abandonment in Federal Oil Co. v. Western Oil Co. et al. (C. C. A.) 112 F. 373. Four years' delay in asserting rights to develop mineral oils from lands held fatal. Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328. See, also, Crawford v. Ritchey, 43 W. Va. 252, 27 S. E. 220.

[12, 13] That these leases should be con-

strued most strongly against the lessees is the Oklahoma doctrine. Superior Oil & Gas Co. v. Mehlin, 25 Okl. 809, 108 P. 545, 138 Am. St. Rep. 942. Also that they should be construed so as to promote development and prevent delay, where the terms thereof will permit it. Garfield Oil Co. v. Champlin et al., 78 Okl. 91, 189 P. 514. While other minerals are covered by the instruments under discussion the entire controversy has arisen over the rights to oil and gas.

[14] We are satisfied the trial court was correct in holding that the conveyances, entitled "Oil and Gas Deeds," executed by Sancho and wife to McNabb May 30, 1906, and the conveyance executed on June 13, 1906, by Cyrus and wife to McNabb, were mining leases; that by the failure of the lessees and their assignees to attempt in any way to exercise any rights under the same for 15 years their claims are barred, and they are estopped by reason of their laches to question the rights of appellees. These conveyances constitute a cloud upon the title of appellees, and they are entitled to have the same removed.

The decree of the trial court was correct, and it is affirmed.