# CHARLESTON

## STARN v. HUFFMAN.

Submitted June 10, 1907.   Decided October 29, 1907.

1. MINES AND MINERALS—*Leases—Cancellation.*

   A lease of a coal vein for mining for one year, and as long thereafter as the lessee may continue to mine it, the lessor to receive ten cents per ton for all coal mined payable at the end of each thirty days, and mining to begin the next day. After the lapse of two years and three months, no mining having been done, equity will cancel the lease at the suit of the lessor. (p. 423.)

2. SAME.

   Principles upon which equity will cancel mining leases for failure to operate. (p. 425.)

3. PARTIES—*Who May be Made.*

   A mere statement in an answer that other persons are interested in the property involved, without proof of their interest, their rights not being affected by the decree, will not be ground for reversal. Where one is not interested in the controversy between the immediate litigants, but has an interest in the subject matter which may be conveniently settled in the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant. (p. 427.)

Appeal from Circuit Court, Marion County.

Bill by James Starn against Samuel S. Huffman and others. Decree for complainant, and defendants appeal.

*Affirmed.*

B. F. RAMAGE, for appellants.

E. F. MORGAN and U. N. ARNETT, JR., for appellee.

BRANNON, JUDGE:

James Starn made a lease to Samuel S. Huffman of the Pittsburgh vein of coal in a tract of 12 acres of land for one year and as much longer as Huffman should continue to operate the mine, which lease provided that the lessee should pay the lessor ten cents per ton for all coal mined, and that the lessee should "begin mining said coal on or before December 19th, 1902, and pay for said coal every thirty days." The lease dates 18 December, 1902. Huffman

assigned the lease to James F. Cook and John P. Hart. Starn brought a chancery suit in the Marion county circuit court 23 March, 1905, to cancel said lease for failure to mine as required by it, and to clear and quiet the title of Starn to said coal, and a decree was made cancelling the lease, and the defendants appeal. The defendants filed an answer, but introduced no evidence to support it or to meet the plaintiff's evidence.

No mining whatever was done under the lease. This default calls for a rescission of the lease. So far as the lessor is concerned the benefit to him would come only from the ten cents per ton of coal. There was no other inducement for his execution of the lease. The very nature of the contract speaks this fact. The lessee knew it. The very letter of the lease demanded a beginning of mining next day. This shows that promptness was designed by the parties, not a day to be lost. The contract ran out in a year. Two years and three months went by without a particle of work by the lessee. Here is a total failure of consideration as to the lessor. Shall the lease stand to tie up the land and prevent its owner from the use of the coal and let the lessee hold it up for speculation? The very requirement to begin mining the next day, and the very nature of the purpose of the contract show that time is the essence of the contract. It was remarked in *Urpman* v. *Lowther Oil Co,,* 53 W. Va. p, 505, that, "Under some circumstances of delay or fraudulent evasion of duty of development equity will cancel an oil lease, as development is regarded as the real intent of the lessor, even if there be no express clause or forfeiture. *Crawford* v. *Richey,* 43 W. Va. 252; *Blue Stone Coal Co.* v. *Bell,* 38 W. Va. 297; *Betman* v. *Harness,* 42 W. Va. 433; Bryan on Petro. & Gas, section 182, citing *Western Pa. Co.* v. *George,* 16 Pa. 47; *Elk Fork Oil Co.* v. *Jennings,* 84 Fed. 839." The authorities there cited give support to the statement there made upon this practically important subject. In mining leases providing in favor of the lessor a share of the product or a tonnage of ore or other product, even where there is no covenant to begin work within a certain time, there is an implied covenant to begin in a time reasonable, because the compensation in contemplation of both

parties otherwise fails. Bryan on Petro. section 215; Snyder on Mines, section 1180. In *Shenandoah Land Co.* v. *Hise*, 92 Va. 238, was a lease for mining all minerals with no time fixed for commencement, and no express covenant to mine, and no forfeiture clause. It was contended that the agreement was not revocable. The court said: "The record shows that no consideration passed from Nicholas to Sheffer when the agreement was made, and therefore the real consideration moving Sheffer to enter into an agreement was the one-fourth of the profits of the minerals to be mined from this land. Nicholas might never have taken any minerals from the land, and, in that event, if this agreement is held to be a conveyance of the minerals therein, it would be to hold that there had been a sale of the minerals without a consideration. It is true that there is no covenant in the agreement on the part of Nicholas to mine the minerals; but, to give effect to the agreement, it must be held that the acceptance of it by Nicholas amounted to an agreement on his part to mine the minerals to be found on the property, and within a reasonable time; otherwise, the agreement might prove entirely fruitless to Sheffer and those claiming under him. *Caldwell* v. *Fulton*, 72 Amer. Dec. 766; and *Grubb* v. *Bayard*, 2 Wall, Jun. 81. It has been maintained as elementary law, by decisions of this court, as well as by courts of other States, that an agreement to do something other than to pay money, no time being expressed, means a promise to do it within a reasonable time. *Cowan* v. *Radford Iron Co.*, 93 Va. 547; *Warren* v. *Wheeler*, 8 Metc. (Mass.) 97; *Atwood* v. *Cobb*, 16 Pick. 227; *Ryan* v. *Hall*, 13 Metc. (Mass.) 520; *Thompson* v. *Ketchum*, 8 Johns. 189; *Barry* v. *Ransom*, 12 N. Y. 462; and *Young* v. *Ellis*, 91 Va. 297.

Judge Lacy, in delivering the opinion of this court, construing the contract under consideration in the case of *Cowan* v. *Radford Iron Co.*, *supra*, says: 'Regard should be had to the intention of the parties, and such 'intention should be given effect. To arrive at this intention, regard is to be had to the situation of the parties, the subject-matter of the agreement, the object which the parties had in view at the time, and intended to accomplish. A con-

struction should be avoided, if it can be done consistently with the tenor of the agreement, which would be *unreasonable* or unequal, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties.'" The court upheld the jurisdiction in equity to cancel the lease. *Maxwell* v. *Todd*, 112 N. C. pt. 1 Syl. 677, is as follows: "Where a mining lease provides for the payment to lessors of a part of the net proceeds of minerals taken from the land, but contains no stipulation for a forfeiture through failure to open and work the mines, the law will construe the contract as if such a stipulation had been expressly written therein, and will adjudge such lease to be forfeited if, within a reasonable time, the lessee fails to carry out the purpose of the lease."

In *Island Coal Co.* v. *Combs*, 152 Ind. 579, it is held that where a coal lease is an agreement to pay a royalty dependent on the amount of coal mined, in the absence of a provision to the contrary, the lessee impliedly obligates himself to begin mining within a reasonable time. So it is distinctly held, as to a coal lease, in *Bluestone Co.* v. *Bell*, 38 W. Va. 297. If such is the law where the lease does not fix a time for beginning mining, how much stronger for cancellation is a case where the lease fixes a time, as in this case? Courts look at the nature of the contract to see whether time fixed is of the essence, as surely it must be regarded in the present case. "There is no equitable jurisdiction to make a new contract which the parties have not made." Hammond on Contracts, 883. Time will be regarded of the essence of the contract where the benefit to accrue from the consideration materially depends on strict performance. 9 Cyc. 606 and note. I call special attention to the opinion of JUDGE McWHORTER in *Crawford* v. *Richey*, 43 W. Va. on page 258. "An oil or gas lease cannot be held for merely speculative purposes. 'No lease of land for a rent for a return to the landlord out of the land which passes' can be construed to enable the tenant merely to hold the lease for purposes of speculation, without doing and performing therewith what the lease contemplated. Such a construction would, indeed, make all such contracts a snare for the entrapment and in-

jury of the unwary landlord. A man buying and paying for land may do with it as he likes—work it or let it lie idle. But a tenant to whom land passes for a specified purpose has no such discretion; he must perform what he stipulated to do.'" Thornton on Oil and Gas, section 128, citing *Rorer Iron Co.* v. *Trout*, 83 Va. 397. 2 Snyder on Mines, section 1179, says: "The duration of the tenancy, notwithstanding some specified fixed period, as hereafter shown, is limited to actual operation. Whence it follows that the duty to commence and to test and bore for oil or gas, whether imposed as a covenant or expressed as a condition, generally operates as the latter, and the failure to test and work promptly avoids the lease at the option of the lessor." It is true, as stated in section 1181, that more diligence is required in oil and gas leases than leases for other minerals, yet the same general principles prevail. The cases above cited were coal leases. As to oil and gas leases the greatest strictness prevails as to time of development. The Circuit Court of Appeals, in *Huggin* v. *Daley*, 99 Fed. R. 606, holds as follows: "By a course of decision in West Virginia, which has established a rule of property, it is settled that an oil and gas lease in which the sole compensation to the lessor is a share of the product, is not a grant of property in the oil or in the land until oil is actually produced, but merely the right of possession for the purpose of exploration and development; and there is always an implied, if not an express, covenant for diligent search and operation. A different rule of construction obtained as to oil and gas leases from that applied to ordinary leases or to other mining leases, and owing to the peculiar nature of the mineral, and the danger of loss to the owner from drainage by surrounding wells, such leases are construed most strongly in favor of the lessor. Where an oil and gas lease, by which the lessor is to be compensated solely by a share of the product contain a proviso requiring the lessee to make and complete a well on the property within a specified time, such proviso and the time of its performance are of the essence of the contract, and it constitutes a condition precedent to the vesting of any estate in the lessee, without regard to the grammatical construction of the

instrument.  When the lessee makes no attempt to comply with such provision, and evidences no intention to do so, at the expiration of the term stipulated the lease becomes forfeitable at the option of the lessor, although by its terms it is for a definite term of years; and being in possession the exercise of such option is sufficiently evident by the lessors execution of a new lease to another party."

So much without regard to any element of fraud or misrepresentation; but the bill charges and the evidence shows that Huffman fraudulently represented to Starn that Huffman and unnamed associates had the means and intended to mine and transport the coal, and fraudulently agreed to begin mining the next day, and had means to do so, and would mine the coal to exhaustion, and would pay Starn his royalty, and that it would be "an immediate profit" to Starn, and that he, believing that Huffman had money and machinery to so mine, made the lease.  There was a total failure to make good the promises and assurances on faith of which the lease was made.

For error it is suggested that Thomas D. Brook and Andrew Hart should have been made parties.  The answer states that the defendant assigned to them an undivided interest in the lease.  The evidence to sustain the statement is not in the case.  No evidence was given to sustain it.  It does not appear that these parties had any interest.  If they have, it is not affected.  How does it injure the defendant that these persons were not parties?  If the plaintiff chose to take a decree without their presence, it does not lie in the mouths of the defendants to allege this fact for error.  Why did they not prove the fact in the court below?  As Justice Bradley says, "When he is not interested in the controversy between the immediate litigants, but has an interest which may be conveniently settled in the suit, and thereby preclude future litigation, he may be a party or not at the option of the complainant."  Justice Bradley said that if the court could do justice to the parties before it without injury, to another the court could decree without the absent party.  This is found in Barton Chy. 143, and *Williams* v. *Bankhead*, 19 Wall. 563.  There was no proof

of any interest in these absent parties, and we said in *Smith* v. *Cornelius*, 41 W. Va. 60, that until it appear that there is an assignment the assignee need not be made a party.

We affirm the decree of the circuit court.

*Affirmed.*