For the reasons indicated, the judgment will be affirmed.

### On Motion for Rehearing.

[5] Before the adjournment of the last term of court the judgment herein was affirmed. Appellant has filed a motion for rehearing. The principal contention arises, or seems to arise, out of the fact that in mentioning some of the dates the opinion does not correspond with the dates mentioned in the record. The opinion states that the burglary was committed on the 13th of December, and that Norris, owner of the café, had in his employment a man named Mills on the 26th and 27th of December. An inspection of the record shows that the opinion should have stated that the burglary was committed on the 13th of November, and that Norris' statement was to the effect that Mills was in his employ on the 26th and 27th of November. The dates are correct, except located in the wrong month. In some way the wrong month was stated in the opinion, but it is not a matter of any material importance. Appellant claims that he bought the pistol from an Irishman, who was employed at Norris' café. Whether it was Mills about whom Norris made the statement or not is not shown, except by inference. It seems from the record that the examining trial was held on the 13th of December. Appellant testified that he bought the pistol from an Irishman about a week before he was found with the pistol, which was about the 12th of

December, the day his house was searched and pistol found. Norris' statement is to the effect that he had in his employé in his café a man named Mills during the 26th and 27th of November, and that he went away. Appellant claims further that the man from whom he bought the pistol was an Irishman, who he says was a dishwasher at the café, and that when he left he went to Dequency, La. There was no attempt to identify the two men further than as stated as being the same, nor was there an attempt to produce this man at the trial as a witness or otherwise, so as to identify him as being the same man mentioned by Norris. One of appellant's witnesses seems to have been somewhat confused in his testimony, stating that he went to work at this café the latter part of October, and a few days after he was at work this Irishman came there, worked a couple of days, and left.

This much has been stated with reference to dates so as to make the opinion conform to the dates set out in the record. The months, instead of being written in the opinion as December, as above stated, should have been November. We do not believe this to have been of any material importance.

The motion for rehearing will be overruled.

---

### HICKERNELL et al. v. GREGORY et ux.
#### (No. 1612.)

(Court of Civil Appeals of Texas. Amarillo. June 30, 1920. Rehearing Denied Oct. 13, 1920.)

1. **Mines and minerals** ⬕➝59—**Allegations in suit to cancel lease held to charge breach of trust constituting legal fraud.**

Allegations that a lease of oil lands which lessors sought to cancel was granted defendant in trust for a corporation to be returned to lessors if the corporation was not formed, and that after the corporation project was abandoned defendant assigned an interest to his co-defendants, charges a breach of duty by trustee which constitutes legal or presumptive fraud.

2. **Pleading** ⬕➝9—**Pleading fraud without legal conclusion sufficient.**

An allegation of facts which amounts to fraud is a sufficient allegation of fraud, though fraud is not alleged by name nor set out by the pleader as a legal conclusion from the facts.

3. **Trusts** ⬕➝43(1)—**Parol evidence admissible to show delivery of oil lease in trust.**

Parol evidence is admissible to show that the oil lease in controversy was delivered in trust.

4. **Army and navy** ⬕➝34—**Relief act does not prevent forfeiture of oil lease for nonpayment after discharge.**

Soldiers' and Sailors' Civil Relief Act of Congress of March 8, 1918, § 101 (U. S. Comp.

---
⬕➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3078¼aa), does not prevent the forfeiture of an oil and gas lease granted to a soldier for nonpayment of an installment of rent due 12 days after lessor's discharge from the service.

**5. Mines and minerals &#9758;74—Assignees of recorded oil and gas lease can rely on recital of consideration.**

Assignees of an interest in a recorded oil and gas lease can rely on the recital of payment of consideration in the lease, though in fact the consideration was never paid.

**6. Mines and minerals &#9758;79(6)—Rental clause in lease held "condition" subsequent under which lease can be forfeited, and not "covenant."**

In an oil and gas lease the provision for payment of a stipulated rental in case development is not begun is a condition subsequent, under which the enjoyment of the estate depends on the performance thereof, and the lease can be forfeited for nonperformance, not a covenant, for breach of which the only remedy is by action for damages.

**7. Mines and minerals &#9758;74—Recorded lease constructive notice to assignees of condition subsequent.**

Recording of an oil and gas lease prior to its assignment gives constructive notice to the assignees of the conditions in the lease, and such assignees are charged with knowledge that the conditions for development or payment of rent had not been performed.

**8. Mines and minerals &#9758;78(4)—Refusal of rent in suit to cancel oil lease sufficient declaration of forfeiture.**

Where lessees of an oil and gas lease failed either to sink the well or pay the rent within the time stipulated, lessor's refusal thereafter to accept the rent and suit to cancel the lease is sufficient declaration of forfeiture of the lease if any such declaration is required.

Appeal from District Court, Wilbarger County; J. A. Nabers, Judge.

Suit by J. F. Gregory and wife against J. C. Hickernell and others. Judgment for the plaintiffs, and defendants appeal. Affirmed on rehearing.

Berry, Stokes & Killough, of Vernon, for appellants.

Bonner & Storey, of Vernon, for appellees.

HALL, J. Appellees, Gregory and wife, sued appellants, J. C. Hickernell, Cy Long, Daniel Bond, W. A. Lane, and A. P. Peck, to cancel an oil and gas lease on 260 acres of land in Wilbarger county, alleging in substance that about the 5th day of February, 1918, Hickernell, with T. M. Haney and Frank Long, approached plaintiffs to secure said lease, representing to them that Haney and Frank Long had executed similar leases of their land, and that it was the intention of said Haney, Frank Long, and Hickernell,

after they acquired sufficient acreage to justify the drilling of a well, to form a company for that purpose, and that all leases so acquired would be held by Hickernell in trust until such company was formed, when Hickernell would assign the leases to the company, and that the company would immediately thereafter begin to drill a test well; that, if sufficient acreage was not secured, and such company not formed, the lease they were endeavoring to get plaintiffs to make would be surrendered to them.

It is further alleged that plaintiffs, relying upon such promises and representations, without any consideration, on said 5th day of February, 1918, executed and delivered the lease involved to the said Hickernell; that no company was organized as contemplated and no steps taken to drill a test well, and that Hickernell, in part compliance with said representations, after the enterprise was abandoned, surrendered practically all such leases to the several grantors except the one involved in this suit; that in violation of the trust Hickernell caused said lease to be recorded, and afterwards assigned an undivided one-fifth interest each to his codefendants, Long, Peck, Bond, and Lane, who had such assignment duly recorded; that said lease contract provided that, if the lessee failed to begin a well on plaintiff's land within one year from the date of the lease, lessee should pay $16.50 each three months in advance, as rental thereon, from quarter to quarter, to the end of the term or until a well was commenced, which payments should begin on February 6, 1919, and be made to grantor in person or deposited in the Farmers' State Bank at Vernon; that said well was not commenced within the year; such rentals were not paid as provided, which constituted a breach of the material conditions of the lease and all rights thereunder were forfeited; that plaintiffs immediately after such failure renounced such contract and demanded the surrender of the lease, which was refused.

Defendants answered by general demurrer, a number of special exceptions, and general denial. They also further specially answered, in substance, that said lease contract provides that the lessee was to commence a well within one year from date, or thereafter pay grantors rent at the rate of $16.50 per quarter, in advance, to the end of the term, or until a well was commenced, or until the lease was surrendered as stipulated for therein; that it does not provide that it will terminate or forfeit upon failure to drill or pay rental, but that it provides that the grantee, upon payment of $1 at any time, and all amounts due grantors, should have the right to surrender and cancel the lease, in which event it should become null and void, and that these were the only terms provided in the lease for its termination or forfeiture before the end of the

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

term of the lease; that, if the rental had not been paid as provided, they were in fact paid by being deposited in the Waggoner National Bank, and plaintiffs duly notified; that, with full knowledge of all the facts, plaintiffs accepted such payments, and thereby waived all irregularities or objections to the manner of payment; that defendants Cy Long, Peck, Bond, and Lane, in good faith and for valuable consideration, without notice of any infirmity in the lease, acquired an undivided four-fifths interest therein and are innocent purchasers and entitled to hold such interest; that after said lease was made, and on June 26, 1918, Hickernell became a United States soldier, and remained in the service until the 24th day of January, 1919, and by reason of that fact his ability to perform any part of the contract was materially impaired; that he was taken from his home and forced to remain away and was not able to keep in touch with his business affairs, especially the matter involved in this suit; that, if there was any irregularity or failure in the payment of rentals, it was by reason of such military service, and he invoked the Soldiers' and Sailors' Civil Relief Act passed by Congress, and approved March, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3078¼a–3078¼ss).

Plaintiffs filed a trial amendment in which they alleged, in effect, that if they had received any of the rent, as stipulated in the lease contract, it was through mistake, and that they did not intend to so receive it.

The general demurrer and all of the special exceptions urged by defendants were overruled. The case was submitted to the jury upon special issues, the effect of the findings being that Hickernell, acting with Haney and Frank Long, on the 5th day of February, 1918, approached plaintiff, for the purpose of procuring the lease in question, representing to plaintiffs, for the purpose of inducing them to execute said lease, that they were at that time endeavoring to secure oil and mineral leases on a large body of land situated in the vicinity of plaintiff's land, in order that a test well might be drilled on some one of the tracts, including plaintiffs' land; that they further represented that Frank Long and Haney had executed similar leases upon land belonging to them in that community, and that it was the purpose and intention of Haney, Frank Long, and Hickernell, after they had acquired sufficient acreage to justify the drilling of a well, to form a company, and have the same incorporated; that until the company was organized it was agreed and understood between said parties that such leases should be made to and held by Hickernell in trust for the benefit of plaintiffs and all other lessors; that when said company was formed, which was to be done immediately, the defendant Hickernell should forthwith assign the lease of plaintiffs, together with all others obtained in Wilbarger county, to said company; that said company would immediately drill a test well; that, unless plaintiffs executed the said lease, they would not be able to secure sufficient land in that community to justify the drilling of a test well; that Haney, Frank Long, and Hickernell represented and promised that, in the event no such company was ever formed or incorporated, the lease on plaintiffs' land, as well as other leases, would be surrendered to the lessors; that plaintiffs, relying upon such promises, agreements, and representations, and without any other consideration, executed the lease in question conveying the land to Hickernell in trust; that plaintiffs were induced by such representations to execute the lease in question, and that they would not have executed it but for such representations; that the lease was delivered to Hickernell with the understanding that, if no company was formed and no well commenced within one year from the 5th day of February, 1918, Hickernell would surrender said lease; that Hickernell had never paid any cash consideration to plaintiffs at any time after the execution of said lease; that appellees had not intentionally accepted any of the rent deposited to their credit in the Waggoner National Bank by Hickernell; that Peck, Bond, Cy Long, and Lane had paid for the assignment at the rate of $7.50 per acre; and that they were innocent purchasers of their four-fifths interest in the lease.

The following stipulations contained in the lease are set out as bearing upon the matters to be considered on this appeal:

"That the grantor, in consideration of one dollar, the receipt of which is hereby acknowledged, and of other valuable considerations, has granted and conveyed unto the grantee all the oil and gas in and under the following described tracts of land: * * * To have and to hold unto and for the use of the grantee, his heirs and assigns, for the term of five years from the date hereof, and as much longer as oil or gas are produced in paying quantities, yielding and paying to the grantor one-eighth of all oil produced and saved from the premises. * * * Grantee agrees to commence a well on said premises within one year from the date hereof or thereafter pay the grantor as rental $16.50 each three months in advance from quarter to quarter to the end of the term, or until said well is commenced, or this grant is surrendered as herein stipulated, and the commencement of such well shall be full consideration to grantor for the grant hereby made to grantee, with the exclusive right to drill one or more additional wells on the premises during the existence of this grant. * * * The above rentals shall be paid to grantor in person or by check, made payable and deposited in the Farmers' State Bank at Vernon, county of Wilbarger, state of Texas. It is agreed that the grantee, upon payment of one dollar at any time and all amounts then due hereunder to the grantor, shall have the right to surrender and cancel this grant, after which all payments and liabilities thereunder shall cease and this grant shall become null

and void. It is understood that all the terms and conditions between the parties hereto shall extend and apply to their respective heirs, executors, administrators and assigns."

The lease is duly acknowledged by Gregory and wife.

The findings of the jury are fully supported by the evidence.

[1] The first contention to be noticed is urged under the fourth assignment, that where no fraud, accident, or mistake is alleged, the terms and conditions of a written instrument cannot be affected by proof of contradictory verbal promises made prior to its execution. It is true that fraud in verbis is not charged in appellee's pleadings, but it is asserted that Hickernell accepted and held the leases as trustee for the purpose of conveying them to a company to be thereafter formed and incorporated, and in the event no such company was ever formed then it became his duty to reconvey to the lessors. It is further alleged that sufficient acreage was not secured, and in consequence no company was ever formed, and that the project was abandoned; that thereafter the trustee had conveyed four-fifths interest in this lease to his codefendants. This is a specific charge of a breach of duty by one standing in a' fiduciary relation to appellees, and, if true, constitutes legal or presumptive fraud. Simp. Eq. pp. 544–572.

[2] The rule is that, though fraud is neither alleged eo nomine nor set out by the pleader as a legal conclusion from the facts stated, yet, when the pleading sets up facts which, if true, amount to fraud, it is sufficient even without alleging a fraudulent intent. Mussiana v. Goldthwaite, 34 Tex. 126, 7 Am. Rep. 281; Ames Portable Silo & Lumber Co. v. Gill, 190 S. W. 1130, and authorities cited. This record, in our opinion, does not present a case where an allegation of positive or actual fraud and misrepresentation is necessary.

[3] We cannot assent to the propositions urged under the second, fifth, and sixth assignments, which are, in substance, that the court erred in not directing a verdict for appellants and in permitting certain witnesses and the' appellee J. F. Gregory to testify in regard to the agreement between appellee and Hickernell prior to the execution of the written lease and to detail the conversations between the parties showing matter of 'inducement and the. terms and conditions upon which the lease was executed and delivered to Hickernell. A part of this testimony was introduced to ingraft a trust upon the lease with Hickernell as trustee. Such testimony is not within the rule which excludes parol evidence tending to contradict or vary the terms of an instrument. The right of a donor or grantor to establish by parol a trust in property conveyed by a written instrument is too well settled by the decisions in this state to require discussion. Beginning with the case of Meade v. Randolph, 8 Tex. 191, down to the last pronouncement by the courts upon that point, they have, by a long line of decisions, held that this may be done. Lester v. Hutson, 167 S. W. 321; Mathews v. Deason, 200 S. W. 855.

The questions of fraud in matters of inducement, the admissibility of parol evidence to show the execution and delivery of written contracts and obligations upon conditions, to prove a collateral and additional agreement, and that the contract in question was to be effective only upon the happening of a contingency or an event which has not transpired, have all been heretofore discussed by this court in Parker v. Naylor, 151 S. W. 1096, and Watson v. Rice, 166 S. W. 106. In both cases we reviewed at some length the authorities bearing upon the questions and, since the rules there announced are applicable to the facts of the instant case, we deem it unnecessary to discuss them further. Writs of error were refused by the Supreme Court in both cases.

[4] Hickernell cannot defend under the Soldiers' & Sailors' Civil Relief Act of Congress of March 8, 1918. He did not enter the military service until June, 1918, after his lease was executed in February, and he states that he was discharged from the service January 24, 1919. The rent was not due until February 6, 1919. It is provided by section 101, subd. 2, that the "period of military service" of a soldier or sailor "shall terminate with the date of discharge from the active service or," etc. Then, according to his own testimony, he cannot claim the advantages and privileges conferred by the act.

It follows from what has been said that, in so far as the judgment decrees the cancellation of Hickernell's interest' in the lease, it must be affirmed.

[5] In the original opinion we reversed the judgment and rendered it in favor of Cy Long, Daniel Bond, W. A. Lane, and A. P. Peck upon the theory that, being a lease without any condition expressly authorizing the lessors, Gregory and wife, to forfeit it because of a breach, the assignees were innocent purchasers from Hickernell of the interest acquired by them. A careful review of the record and of the authorities upon the motion for rehearing has convinced us that we are in error in so holding. It is contended in the motion that we erred when we held that the promise to pay rentals or drill a' well within 12 months were mere covenants, for a breach of which appellees could sue only for damages. We think we are sustained by the authorities in holding that the assignees, Cy Long and others, could rely upon the recitation that $1 original consideration was paid by Hickernell at the time of the execution of the lease, nor do we recede from our position that said assignees are in no way bound by the fraud of Hickernell and his associates in securing the lease, since the evidence sup-

ports the finding of the jury that they had no actual notice of such fraud. As stated in the original opinion, however, the lease from appellees to Hickernell was duly recorded prior to the assignment. It provides that the lessee shall, within one year from date of the lease, begin a well on the leased premises, or pay $16.50 per quarter in advance to continue the option to the end of the term or until such well was commenced. The year in which it was contemplated that the well should be commenced expired on February 6, 1919. The uncontroverted evidence is that no effort was made in this direction, and the jury found that the quarterly rental provided for had not been paid as stipulated in the lease. The assignees did not acquire their interest until the 2d. day of May, 1919. While it was shown that the $1 consideration recited in the lease was never in fact paid, and that the assignees were probably led to believe that the quarterly rental for the first quarter had been paid, these facts do not militate against the appellees, nor affect their right to a cancellation.

[6] The rule seems to be that oil and gas leases of the kind under consideration convey an interest in the land. Texas Co. v. Daugherty et al., 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. It is said in that case:

"It will be further noted that no condition is expressed or act required of the grantee which preceded the vesting of such estates as the instruments created. Upon penalty of forfeiture of 'the rights and estates hereby granted,' the grantee was required to begin operations for the drilling of a well for oil or gas within one year or pay a stipulated amount quarterly during the extension provided; but it was the manifest purpose of the parties that the estate created should constitute a present grant, and that the grantee should perform these acts after taking possession, which rendered them conditions subsequent. A fee may pass by deed upon a condition subsequent to the same extent as though the condition did not exist, subject to the contingency of being defeated according to the condition. And here, if any property was conveyed, there was a present grant, but liable to be defeated by the grantee's failure to perform the requirement in respect to beginning operations for the drilling of a well for oil or gas, or, in lieu thereof, making the quarterly payment provided. The grant amounted to a defeasible title in fee to the oil and gas in the ground, if oil and gas in place are capable of ownership and conveyance."

While the lease in the instant case has no stipulation expressly providing for forfeiture in the event of a failure on the part of the lessee to begin operations looking to the development of the mineral resources of the premises within 12 months, the weight of authority and the trend of the later decisions is that such a right exists because of the peculiar nature of oil and gas leases, and of the subject-matter of such contracts. The

authorities further hold that, when the contract binds the lessee to drill within a stated time or pay a stipulated rental during the further delay, such obligations should be construed to be conditions subsequent where the original consideration paid is merely nominal and it appears that the real consideration is a contemplated successful development of the premises and the profits accruing to the lessor in the payment of royalties. Oil and gas leases are construed most favorably to the lessor. Aycock v. Paraffine Oil Co., 210 S. W. 851.

As said in 12 R. C. L. p. 874, § 14:

"Even in the absence of an express covenant or agreement for diligent prosecution of work under the lease, the rule is well settled that as a matter of law the lessee in a lease giving him the exclusive right to develop the leased premises for gas owes the lessor the duty implied from this relation between the parties to use all reasonable means properly and diligently to develop the premises and to drill sufficient wells on adjoining property, and that he cannot hold the grant for speculative purposes purely. While many of the cases have gone upon the ground of abandonment, the governing principle in all leases of this character would appear to be that the discovery and production of oil is a condition precedent to the continuance of vesting of any estate in the demised premises; and where the only consideration is prospective royalty to come from the exploration and development, failure to explore and develop renders the agreement a mere nudum pactum, and works a forfeiture of the lease, for it is of the very essence of the contract that work should be done. * * * On the other hand, if it is conceded or the court has found that the lessor cannot be adequately compensated in an action for damages, equity has jurisdiction and will give relief by canceling the lease."

In the construction of a lease similar to the one under consideration here, in Fisher v. Crescent Oil Co., 178 S. W. 905, and where it is stipulated that the conditions contained in the lease extend to the assignees thereof, Huff, C. J., said:

"We are inclined, however, to believe with appellant that the contract in question has an implied obligation, if not express, that the lessees would continue to mine and operate the lease for the production of oil during the time of its continuance, and that, as a part of the consideration for the lease, one-eighth of the oil so produced should be delivered to the lessor free of charge. The contract itself evidences the fact that the parties thereto so understood it. * * * The agreement implies that the lessees or their assigns will produce oil upon the discovery during the term and will pay one-eighth of the oil as a royalty for such right. This was a condition subsequent. A failure on the part of the lessees or their assigns to perform this implied obligation of the contract would work a forfeiture. Our Supreme Court has said: 'Although there was no express agreement or requirement that Hunt should operate the mine if, on develop-

ment, it was found to contain coal which could profitably be worked, yet there was an implied agreement to that effect, and a substantial failure in this respect ought to be held ground for forfeiture.' Benavides v. Hunt, 79 Tex. 394, 15 S. W. 401. Again in that case it was said: 'In cases in which the grantor has no pecuniary interest in the continuous possession and use of property conveyed on conditions subsequent, a failure to use for many years has been held not to operate 'a forfeiture. Osgood v. Abbott, 58 Me. 73; Mills v. Seminary, 58 Wis. 135, 15 N. W. 133. The rule, however, ought not to be so latitudinous in cases in which the grantor is expected to be benefited by the use, and when contemplated profits to be derived from the use forms in part the consideration for the grant; but even in this class of cases it has been held that temporary cessation to use does not forfeit the grant.' "

In J. N. Guffey Petroleum Co. v. Oliver, 79 S. W. 884, Garrett, C. J., in discussing the right to forfeit the contract, said:

"By a number of assignments of error and propositions thereunder the defendant contests the right of the plaintiff Oliver to forfeit the contract for failure to develop the land for oil, because the contract does not expressly provide that it might be done. It is contended that the obligation to develop was an implied obligation and a collateral covenant, for the breach of which the remedy of the plaintiff would at most be an action for damages. The contract in this case was an option to the lessee. It was executed in consideration of royalties reserved, and, though silent as to the extent of development required, the law implies a condition for diligent good faith, and reasonable development. Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396; Kleppner v. Lemon, 176 Pa. 502, 35 Atl. 109; Bryan's Law of Petroleum and Natural Gas, p. 189, § 215; Id., pp. 195, 197, §§ 223, 225. * * * Although the option had been complied with by the commencement of work as stipulated, and the contract may have lost 'its unilateral character, yet, as above stated, it was subject to forfeiture for failure to diligently prosecute the development of the land for oil; and this notwithstanding the expenditure of money and labor already made, if it fell short of a compliance with the obligation, and the facts alleged in the petition are sufficient to show the right of the plaintiff to forfeit the lease for want of development."

It appears from the facts that the Oliver Case was one in which development had actually begun and had been prosecuted for a time, and upon cessation the lessor had declared a forfeiture. Munsey v. Marnet, O. & G. Co., 199 S. W. 686, is a case in which the court declared leases of the character of the one under consideration to be a grant upon conditions subsequent, and further that, where the grant is with the expectation of realizing a profit from development, the rule that equity abhors a forfeiture has no application. In Price v. Biggs, 217 S. W. 236, Huff, C. J., said:

"The covenants to be performed by the lessee would appear to be an obligation on the part of the appellee within a given time to begin and prosecute the work of mining. This would make the obligations mutual, and not unilateral, and would not affect the right to forfeit if the conditions were not fulfilled as stipulated. The question would become one of forfeiture of a conditional grant, rather than the validity of an optional contract."

The contract in that case provided that the lessee should begin a well within 30 days and prosecute the work diligently until either oil or gas was found in paying quantities. In Grubb v. McAfee (Sup.) 212 S. W. 464, Justice Greenwood, in construing a lease reciting a consideration of $1 paid and granting the right to prospect for 20 years, or as long as oil or gas should be found in paying quantities, and which contained a stipulation that drilling should begin within 30 days and be prosecuted with due diligence until a depth of 300 feet was reached or oil found in paying quantities, and expressly providing for forfeiture in the event of a failure to drill the first well, disapproved the holding of the commissioners to the effect that there was an implied obligation to continue exploration, and that such obligation was in the nature of a condition subsequent, entitling the lessor upon the breach to forfeit the contract. It is there said that the whole cause of forfeiture expressed in the contract was the failure to drill the well within the time or to the depth specified. The contract did not provide for payment of any rental in the event no well was drilled, nor was there any obligation resting on the lessee to continue drilling after the first effort. While the Supreme Court approved the commissioners' holding that the law implied the lessee's obligation to use reasonable diligence to continue drilling after oil was found in the first well, it was decided that the court would not base a forfeiture upon the breach of an implied duty to continue exploration. In the instant case the obligation to sink the well within the year or pay the stipulated rental is expressed, and its effect being a condition subsequent, the right of forfeiture exists in case of a failure to do one or the other. In Bettman v. Harness, 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566, the Supreme Court of West Virginia, in construing a contract which bound the lessee to drill within two years or pay $15 per month in advance after that time during the delay, said:

"I come now to the merits—the rights of the plaintiffs under their leases. No work for development of oil or gas was done under them within the 2 years fixed by them as the term, but through that term, and for 13 months after its close, the lessees paid the sums of $15 and $5 a month required by them for delay of work of development, and the lessors received that money up to the close of that 13 months, when they refused to receive any more, and the lessees deposited it thereafter in the bank. Did such payments continue the leases under

their letter after the 2 years? That depends on their construction. The lessees say they had the right to bore or not, as they chose; that, if they did not bore, all they had to· do was to pay said monthly sums, and their two leases were kept in full force, not· merely within the 2 years, but thereafter until they should cease to pay. Take the habendum clause, reading, 'To have and to hold the said premises for said purposes only * * * during and until the full term of two years next ensuing the date above written, and as much longer as oil or gas is found in paying quantities thereon, or the rental paid thereon.' What do the words 'or the rental paid thereon' mean? For they are words which, it is thought, prolonged the term over 2 years; the claim being that either the production of oil or payment of the fixed sums, either one or the other, extended the term."

Without quoting at length from the opinion, the holding is that the $15 designated 'rental' is not in fact rental, but is commutation money, and, looking to the language, the subject-matter, and the surrounding circumstances, to get the intention of the parties and the real meaning of the contract, the term of the option ended at the expiration of two years, and the lessee could not, in the absence of boring, prolong it by paying $60 annually. This case is frequently cited, and possibly goes further than the majority of the courts of other jurisdictions in this particular. It is at least authority for the proposition that, when the period for development has expired without any effort having been made by the lessee to drill, the lessor is entitled to declare a forfeiture upon the lessee's failure to extend his option by paying the stipulated commutation money. In Loveland v. Longhenry, 145 Wis. 67, 129 N. W. 652, 140 Am. St. Rep. 1072, the court, after discussing the rights of the lessor, under a lease similar to the one in the instant case, said:

"While analogies arising from urban or agricultural leases are not to be wholly rejected, it must be remembered that these mining leases· form a distinct class of instruments, creating special and peculiar relations and legal rights. In Maxwell v. Todd, 112 N. C. 677, 16 S. E. 926, the mining lease had a fixed term of 99 years, but otherwise it was very similar in terms to the lease in the instant case. The court, noticing that there was in the lease no stipulation for forfeiture for failure to open and work the mines, held that· the construction which the law put on the lease would be the same as if such stipulation had been expressly written therein. The contrary construction would prevent the lessor from getting his tolls under the express covenant to pay the sum and at the same time deprive him of all opportunity to work the mine himself or lease it to others. In Starn v. Huffman, 62 W. Va. 422, 59 S. E. 179, there was a mining lease from Starn to Huffman for one year and as much longer as Huffman could continue to work the mine, the lessee to pay 10 cents per ton for all coal mined and begin mining coal on or before December 19, 1902, and pay

for said coal every 30 days. There was nothing in the form of a condition and no express stipulation for forfeiture. Nothing was done under the lease, and it was held that this called for termination of the lease. Many cases are collected and reviewed in· the opinion of the court. See, also, Shenandoah L. & A. C. Co. v. Hise, 92 Va. 238, 23 S. E. 303; Western Pa. G. Co. v. George, 161 Pa. 47, 28 Atl. 1004; Woodward v. Mitchell, 140 Ind. 406, 39 N. E. 437; Huggins v. Daley, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; 20 Am. & Eng. Ency. of Law (2d Ed.) 779, 781; 26 Cyc. 708, 709, and cases. * * * Horner v. Chicago, etc., Ry. Co., 38 Wis. 165, contains these words: '(1) Although there are technical words which, if used in a conveyance, could unmistakably create a condition, yet the use thereof is not absolutely essential to ·that end, and a valid condition may be expressed without employing those words. (2) It is not essential to a valid condition that, in case of a breach thereof, a right to re-entry be expressly reserved in the deed, or· that it be expressed therein that the estate of the grantee shall terminate with a breach of the condition.' "

The distinction between conditions and covenants is thus expressed in 8 R. C. L. p. 1100, § 158:

"It seems that the same words may be implied to create either a covenant or a condition, but a condition differs from a covenant. The legal responsibility· of nonfulfillment of a covenant is that the party violating it must respond in damages. The consequence of the nonfulfillment of a condition is a forfeiture of the estate. Where the language is plain and clear, whether the .clause creates a condition subsequent or a mere personal covenant is a matter of pure legal interpretation for the court. And if the intention of the parties is so clearly expressed as to show that the enjoyment of the estate created by the deed was intended to depend on the performance of a certain stipulation, a condition, and not a covenant, will be declared."

To hold that the obligation upon Hickernell in the instant case is merely a covenant would be to confine appellees to an action for damages, which, by reason of the uncertainty of the measure of his damages and the difficulty of proving the injury, would be in effect denying him a remedy. We think it is clear that the enjoyment of the estate created by the lease in question depends entirely on the performance of the stipulation requiring appellant to either develop the land or promptly pay the quarterly rent. So construed, the stipulation is a condition subsequent. Time being of the essence of contracts of this character, the failure to make prompt payment at least entitled appellees to declare a forfeiture.

It is unnecessary to multiply authorities upon the proposition that the instrument under consideration conveyed an interest in the land. That much is conceded by appellants. If a condition, it is, under the authorities above quoted, a condition subsequent.

[7, 8] The recordation of the instrument prior to the time assignees acquired their right is constructive notice of such condition. The rule is that, where one has notice of conditions or restrictions, he is chargeable with the pertinent facts which inquiry would have revealed, such as the character and extent thereof, or the purpose for which they were made. 39 Cyc. 1708; Id., 1707, (III), (B), and authorities. The appellants are charged with knowledge that no well had been commenced within 12 months and of the failure of Hickernell to pay the rent according to the terms of the contract. Since appellees were in possession no re-entry upon breach of the condition subsequent was required, and their refusal to accept the rent after the 6th day of February and the institution of this suit is a sufficient declaration of forfeiture, if indeed a declaration be necessary.

The original opinion is withdrawn, the motion for rehearing is granted, and the judgment of the trial court is in all things affirmed.